# NATIONAL SECURITY BANK *v.* BUTLER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF MASSACHUSETTS.

No. 166.   Argued January 14, 1889. — Decided January 28, 1889.

From the facts of this case, it was held, that the intent of a national bank, after it was insolvent, to prefer a creditor, by a transfer of assets, in violation of § 5242 of the Revised Statutes, was a necessary conclusion; that, if any other verdict than one for the plaintiff, in a suit at law by the receiver of the bank to recover the value of the assets from the creditor, had been rendered by the jury, it would have been the duty of the court to set it aside; and that it was proper to direct a verdict for the plaintiff.

The meaning of § 5242 is not different from the meaning of § 52 of the act of June 3, 1864, c. 106, 13 Stat. 115.

It is sufficient, under § 5242, to invalidate such a transfer, that it is made in contemplation of insolvency, and either with a view on the part of the bank to prevent the application of its assets in the manner prescribed by chapter 4 of title 62 of the Revised Statutes, or with a view on its part to the preference of one creditor to another; and it is not necessary to such invalidity that there should be such view on the part of the creditor in receiving the transfer, or any knowledge or suspicion on his part at the time, that the debtor is insolvent or contemplates insolvency.

THE case is stated in the opinion.

*Mr. Russell Gray* and *Mr. J. C. Coombs* for plaintiff in error.

*Mr. A. A. Ranney* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law, brought in the District Court of the United States for the District of Massachusetts, in November, 1882, by the receiver of the Pacific National Bank, a corporation duly organized under the banking laws of the United States, against the National Security Bank, another corporation so organized.

The declaration contains three counts. The first count

alleges that the Pacific National Bank became insolvent and failed; that the Comptroller of the Currency, on the 22d of May, 1882, appointed the plaintiff, Linus M. Price, receiver of the same; that the bank stopped business and closed its doors on the 20th of May, 1882, being insolvent and unable to pay its debts ; that steps were, on that day, taken to represent it to said comptroller as insolvent, and to have a receiver appointed to close it up; that it was determined, on the 20th of May, 1882, not to open its doors or carry on business longer ; that, on that day, the Security Bank was owing to the Pacific Bank, in account, as balance on book, $40.25, and the former bank also held against the latter a certificate of deposit for $10,000; that, on the 22d of May, 1882, the Pacific Bank, through its cashier, although it was then insolvent and contemplated insolvency, and had then actually failed and stopped business and taken said steps for the appointment of a receiver, transferred and delivered to the Security Bank certain checks, drafts, bills, and other property, amounting on their face to the sum of $10,967.95, which, with the said $40.25, made the sum of $11,008.20 ; that the Security Bank thereupon gave to the cashier of the Pacific Bank a certificate of deposit, as follows :

"No. 6216.                    NATIONAL SECURITY BANK,
"$11,008$\frac{20}{100}$.              BOSTON, *May* 22, 1882.
   "E. C. Whitney, cash., has deposited in this bank eleven thousand and eight $\frac{20}{100}$ dollars, payable to the order of himself on the return of this certificate properly indorsed.
                              "CHAS. R. BATT, *Cashier;*"

that the Security Bank collected the money upon the said checks, etc. ; that the said certificate of deposit came to the hands of the plaintiff as receiver, among the other assets of the Pacific Bank; that, on a demand made by him, the Security Bank refused to deliver or pay the said property, or its avails, claiming a right to set it off or apply it on the said certificate of deposit for $10,000; that, on the 20th of May, 1882, the Pacific Bank was insolvent; that it, and its directors and

officers, well knew the same, and contemplated insolvency; that it was in the same condition on the 22d of May, 1882; that the said transfer of property to the Security Bank was in fraud of the creditors of the Pacific Bank, with a view of giving the former bank a preference over other creditors, by having the same operate as a payment of the debt due to the Security Bank by the Pacific Bank, by way of set-off or otherwise; that the said transfer was illegal, and, if allowed to operate as a set-off or payment, would work an unlawful preference; and that the Pacific Bank, and its officers and cashier, well knew, when the transfer was made, that the property, or its proceeds, when collected, would or might be availed of for the payment of the debt due the Security Bank, by way of set-off or otherwise, and contemplated the same, or was bound and is presumed by law to have contemplated and intended the same.

The second count of the declaration alleges the giving of the certificate of deposit for $11,008.20; that the plaintiff, as receiver, presented to the Security Bank said certificate, duly indorsed, and demanded payment thereof; but that the defendant refused to pay it. The third count alleges that the defendant owes to the plaintiff, as receiver, $11,008.20, as and for money had and received by the defendant to the use of the plaintiff. The declaration demands the recovery of $11,008.20, with interest.

The defendant filed an answer and a declaration in set-off. The substance of these papers is, that the defendant has a claim in set-off against the Pacific Bank for the amount of the certificate of deposit of the latter bank for $10,000 which was as follows:

    " THE PACIFIC NATIONAL BANK OF BOSTON, MASS.
" $10,000.                   BOSTON, *May* 13th, 1882.
    " This certifies that there has been deposited in this bank ten thousand dollars, payable to the order of Nat. Security Bank on return of this certificate properly indorsed.
    " No. 2513.             E. C. WHITNEY, *Cashier.*
" (Countersigned) G. H. BENYON, *Teller.*"

The plaintiff put in an answer to the defendant's declaration. in set-off, making substantially the same averments which are contained in the first count of the plaintiff's declaration.

On these issues there was a trial by a jury, which resulted in a verdict for the plaintiff for $12,232.88, and a judgment for him for that amount, with costs. The case was taken to the Circuit Court by the defendant, by a writ of error, and it affirmed the judgment of the District Court, with costs. The opinion of the Circuit Court is reported in 22 Fed. Rep. 697. The plaintiff brought the case to this court by a writ of error; and afterwards Peter Butler, as successor of Price, as receiver, became plaintiff in error.

There was a bill of exceptions taken by the defendant in the District Court. It states that the three counts of the plaintiff's declaration were all for the same cause of action, and that the right of action contained in the first count was founded upon § 5242 of the Revised Statutes. That section provides as follows: "All *transfers* of the notes, bonds, bills of exchange, *or* other evidences of. debt owing to any *national banking* association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, *made* with a view to prevent the application of its assets in the manner prescribed by this *chapter*, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void."

That section is incorporated in the Revised Statutes from § 52 of the act of June 3, 1864, c. 106, 13 Stat. 115. The two sections differ in these respects: the word "transfer" becomes "transfers;" the words "and other" become "or other;" the words "any association" become "any national banking association;" the words "with a view to prevent" become "made with a view to prevent;" and the words "this act" become "this chapter." No change was made in the meaning of the statute by inserting in § 5242 the word "made," not found in §.52 of the act of 1864.

The bill of exceptions states that it was admitted at the trial that the $40.25 was on deposit in the Security Bank before the commission of any act of insolvency by the Pacific Bank, and that as to so much of the plaintiff's claim the set-off was a good answer. As to the rest of the claim, the following facts were proved or admitted:

"On Saturday, May 20, 1882, the Pacific Bank, which had previously failed in November, 1881, and had afterwards reorganized and done business, being deeply insolvent, its directors held a meeting in the afternoon, after the regular close of business for the day, and passed these votes, which votes and the proposed action the directors purposely kept concealed until they were carried out; 'Voted, To go into liquidation. Voted, That the bank be closed to business. Voted, That Lewis Coleman, president, Micah Dyer, Jr., Andrew F. Reed, directors, and William J. Best, be and hereby are appointed a committee to proceed to Washington to confer with the Hon. John J. Knox, Comptroller of the Currency, as to the measures proper to be taken in the present situation; that, if the comptroller shall deem it necessary to appoint a receiver, the directors unanimously recommend for that position Mr. E. C. Whitney, who, since March 18, has discharged the duties of cashier with great ability, diligence, and energy, and who is perfectly familiar with the assets, liabilities, and affairs of the bank and thoroughly understands the steps necessary to be taken to speedily and profitably realize upon the estate to the fullest extent; that, if Mr. E. C. Whitney shall be appointed receiver of the bank, the directors will furnish satisfactory bonds for the faithful discharge of his duties, to any amount which the comptroller may require.'

"And the bank never after did any business except so far as appears in this bill. The committee of the directors went to Washington on Saturday night, and on Monday, May 22, saw the comptroller, who appointed the plaintiff receiver about ten o'clock A.M., and the plaintiff left Washington on Monday and on the following day arrived in Boston and took possession of the bank.

"For some time before this, and ever since the resuscitation

of the bank after its first failure, the Pacific Bank, not being a member of the Boston clearing house, had been in the habit daily, of depositing with the defendant all checks received by the Pacific Bank, to be collected through the clearing-house by the defendant, with which the Pacific Bank was credited as a depositor and against which it drew.

" On Monday morning, May 22, Whitney, the cashier of the Pacific Bank, received by mail, as usual, many letters enclosing drafts and checks, and sent all these checks and drafts, amounting to $10,967.95, to the defendant bank, where they were received and forthwith sent to the clearing-house, with other checks, to be cleared by defendant.

" The messenger who carried the checks to the defendant took at the same time and presented to the defendant a check drawn by Whitney for $11,008.20, being the whole amount of the checks then deposited, and $40.25 already to the credit of the Pacific Bank on its current deposit account with the defendant.

" The defendant's paying teller, at the messenger's request, gave him the defendant's negotiable certificate of deposit, payable on demand, for the said sum of $11,008.20. The defendant at that time held the negotiable certificate of deposit of the Pacific Bank, payable on demand, for $10,000." The copies of those certificates are hereinbefore set forth.

" These transactions took place as early as half-past nine on the morning of May 22, and no officer of the defendant bank then knew or suspected that the Pacific Bank was insolvent or contemplating insolvency, or was not doing business as usual, or that its directors had voted to close it, or that application was to be made for a receiver, and no application had, in fact, at that time been made to the comptroller, it being made about 10 A.M. of that day." The parties had duly demanded of each other payment of their respective claims.

The bill of exceptions also states as follows : " There was other evidence given in the case on both sides, and particularly on the question whether any, and, if any, what, agreement was afterwards made between Whitney, the cashier of the Pacific Bank, and Batt, the cashier of the defendant bank, as

to ·the terms and conditions on which the deposit made on May 22d, as above stated, should be held by the defendant, part of this evidence consisting of a letter from Whitney to Batt." It then proceeds: " The defendant requested the judge to submit to the· jury the three following questions: First, whether or not there was in fact any view or intent on the part of the Pacific Bank, or any of its officers, to give a preference to the defendant over other creditors, or to prevent the application of the assets of the Pacific Bank in the manner prescribed in the bank act; second, whether or not any subsequent agreement was made varying the relation of the two banks as they existed at the time the checks were deposited ; third, if the jury answer the preceding question in the affirmative, whether or not such agreement was expressed in Whitney's letter. The defendant at the same time prayed the judge to give several rulings on matters of law applicable to the facts as they might be found by the jury on the above issues. But the judge refused to submit the above or any questions whatever to the jury, or to give any of the rulings prayed for, on the ground that the issues were immaterial, and that there was no question for the jury, and ruled, as matter of law, that, on the undisputed facts in the case, the plaintiff was entitled to recover the amount of the checks and drafts deposited by the Pacific Bank in defendant's bank on Monday."

The court directed a verdict for the plaintiff for $12,232.88, that being the amount of the checks and drafts, with interest from the date of the writ ; and the defendant excepted to such rulings and refusals to rule.

The view taken by the Circuit Court was, that, under § 5242, the transfer or payment by a bank, to be void, must be made after the commission of an act of insolvency, or in contemplation thereof, and with a view to prevent the application of its assets as provided by law, or with a view to giving a preference to one creditor over another; that the undisputed facts of the case showed that the act of the cashier could, under the circumstances, have no other result, if allowed to stand, than to operate as a preference in favor of the Secur-

ity Bank; that the Pacific Bank had decided to close its doors and go into liquidation; that after that the necessary consequence of the transfer was to create a preference; that it could not be said that the transfer was made with the intention of going on in business, nor could it be contended that it was made to save the credit of the bank; and that, after the vote of the directors to close the bank and go into liquidation, any transfer of its assets to a creditor, whereby that creditor secured a preference, must be presumed to be made with an intent to prefer. We concur in this view of the case.

The directors of the Pacific Bank held a meeting on the afternoon of Saturday, May, 20, 1882, after the regular close of business for that day, and passed three votes: (1) to go into liquidation; (2) that the bank be closed to business; (3) that the president, two directors, and another person be a committee to go to Washington and confer with the Comptroller of the Currency as to the measures proper to be taken, and that, if the comptroller should deem it necessary to appoint a receiver, the directors unanimously recommended for that position Mr. Whitney, the cashier, and that, if he should be appointed receiver, the directors would furnish satisfactory bonds for his faithful discharge of the duties, to any amount which the comptroller might require. These votes and the proposed action the directors purposely kept concealed. The bank never afterward did any business, except so far as appeared in the bill of exceptions. The committee of the directors went to Washington on Saturday night, and on Monday, May 22, 1882, saw the comptroller, who appointed Mr. Price to be the receiver, about 10 o'clock A.M.; and he left Washington on Monday, and on Tuesday arrived in Boston and took possession of the bank.

Although the Pacific Bank, not being a member of the Boston clearing-house, had been in the habit of daily depositing the checks received by it with the defendant, to be collected by the latter through the clearing-house, the Pacific Bank being credited as a depositor and drawing on the Security Bank against the checks; and although it was in accordance with that custom that Mr. Whitney, the cashier of the Pacific

Bank, sent the checks and drafts, amounting to $10,967.95, to the Security Bank on Monday, May 22, 1882, to be cleared by it, drawing for the $11,008.20 at the time, and receiving in return, on its own request, from the Security Bank, a negotiable certificate of deposit of that bank, payable to the order of Mr. Whitney on the return of the certificate properly indorsed; yet Mr. Whitney knew at the time of these transactions that the certificate of deposit for $10,000, given by him to the Security Bank nine days before, created an indebtedness of the Pacific Bank to the Security Bank for that amount, and was, though negotiable, presumably still held by that bank. It was in fact still held by it. The natural presumption was that, if the certificate were still held by the Security Bank, that bank would, as soon as it should learn that the Pacific Bank was closed to business, seek to retain out of the collections the amount of such certificate, and apply that amount to its payment.

It is sufficient, under § 5242 of the Revised Statutes, to invalidate such a transfer, that it is made in contemplation of insolvency, and either with a view to prevent the application of the assets of the bank in the manner prescribed by chapter 4 of title 62 of the Revised Statutes, or with a view to the preference of one creditor to another. Certainly, the transfer in question was made in contemplation of insolvency, made as it was after the directors had voted that the bank should go into liquidation, and should be closed to business, and that a receiver should be appointed; and it was made with a view, on the part of the Pacific Bank and of its cashier, who represented it and acted for it in this transfer of its assets, to prevent the application of its assets in the manner prescribed by such chapter 4 of title 62, and with a view to prefer the Security Bank to other creditors. The transaction, if allowed to stand, could result in nothing else. The statute made it void, although there was no such view on the part of the Security Bank in receiving the transfer of the assets; and although there was no knowledge or suspicion at that time on the part of the Security Bank that the Pacific Bank was insolvent or contemplated insolvency, or was not doing busi-

ness, or that its directors had voted to close it, or that application was to be made for a receiver; and although the transfer took place before the application was actually made to the comptroller for the appointment of a receiver.

There was no question of fact to be submitted to a jury. From the facts proved, the intent to prefer, on the part of the Pacific Bank, was a necessary conclusion; and it was correct. in the District Court to direct a verdict for the plaintiff. If any other verdict, on the facts proved, had been rendered, it would have been the duty of that court to set it aside.

Nor was there any error on the part of the District Court in refusing to submit to the jury the second and third questions which the defendant requested the judge to submit to them. The bill of exceptions does not set forth what the "other evidence" given in the case was, in regard to any subsequent agreement between the cashiers of the two banks, as to the holding of the deposit by the Security Bank. The court ruled that the issues involved in such second and third questions were immaterial; and this court cannot hold otherwise, on the facts set forth in the bill of exceptions. "Any subsequent agreement" must have been made after the receiver had been actually appointed, and could not affect his rights.

The defendant objects that the rulings of the District Court were made, and the verdict and judgment were rendered generally, on the plaintiff's declaration of three counts; and that the first count, which seeks to recover back the money deposited as an unlawful payment, is inconsistent with the second count, which seeks to recover on the certificate of deposit as a valid instrument.

It is a sufficient answer to this contention to say, that no objection was made to the declaration by way of demurrer or otherwise, at the trial or before, and no ruling on the subject was asked for at the trial, or was made the subject of an exception. No objection or exception was taken to the verdict, nor did the defendant request at the trial that the plaintiff should elect on which count he would ask a verdict; nor did the defendant request the court to ask the jury to state on which count of the declaration the verdict was rendered.

We see no inconsistency between the first and second counts of the declaration. They were in substance for the same cause of action; and the first count is clearly sufficient to support the verdict.

*Judgment affirmed.*