SPOKANE COUNTY v. FIRST NAT. BANK OF SPOKANE et al.

(Circuit Court of Appeals, Ninth Circuit. June 24, 1895.)

No. 209.

TRUSTS—FOLLOWING TRUST PROPERTY.
   The owner of property intrusted to another, by whom it has been misapplied, is not entitled to a general lien upon the assets of the trustee for the value of such property, and can only follow the same so far as it can be traced, either in its original form or in other forms into which it has been converted.

Appeal from the Circuit Court of the United States for the Eastern Division of the District of Washington.

This was a suit by the county of Spokane, Wash., against the First National Bank of Spokane and F. Lewis Clark, its receiver, to impress a trust upon assets of the bank in the receiver's hands. The circuit court sustained a demurrer to the bill for want of equity. Complainant appeals. Affirmed.

James E. Fenton and D. W. Henley, for appellant.
C. S. Voorhees, for appellees.

Before McKENNA and GILBERT, Circuit Judges, and KNOWLES, District Judge.

GILBERT, Circuit Judge. The county of Spokane brought a suit against the First National Bank of Spokane and its receiver to recover the balance of public funds deposited with said bank by the treasurer and tax collector of said county between the 9th day of January, 1893, and the 26th day of July of the same year, alleging that between said dates there was deposited with said bank by said officer for safe-keeping $81,257.55, all of which had been repaid to the complainant save and except the sum of $11,355.68, "which said sum the said defendant the First National Bank does now wrongfully retain and hold, and has wrongfully retained and held ever since the 26th day of July, 1893." It is further alleged in the bill that on or about the 26th day of July, 1893, the bank became insolvent and suspended payment, and has not since resumed business, and that

the receiver, since his appointment as such, has received of the assets of the said bank "sufficient money and funds wherewith to pay and satisfy the said balance deposited and received as aforesaid." A demurrer to the bill for want of equity was sustained by the circuit court, and from that ruling this appeal is taken.

It is contended on behalf of the appellant that the money deposited with the bank by the county treasurer was impressed with the character of a trust fund, and that the trust may be enforced against any assets of the bank in the hands of its receiver. It is not alleged in the bill that any of the money of the complainant, or any assets or property thereby procured, has come into the hands of the receiver. It is true it is averred that the bank still retains $11,355.68 of the complainant's money, but it is not said that any portion of that sum was in the possession of the bank when it closed its doors. We interpret the averments of the bill to mean, as in fact it was conceded upon the argument, that the money which the receiver holds is not that which was turned over to him as such when the bank was closed, but that it is the proceeds of collections by him made since that date. If it had been alleged in the bill that at the time of its failure the bank held a sum of money equal to or less than the amount here sued for, the court might lawfully presume that sum to be of the public funds of Spokane county, since it will be presumed that trust funds have not been wrongfully misappropriated or criminally used by the officers of the bank. But while that presumption would prevail as to money on hand, it would not be extended to other assets, for the officers of the bank had as little right to divert the public funds into investment in other property as they had to appropriate them to their own use. But it is said that the complainant has a lien upon the funds in the hands of the receiver upon the theory that the estate of the bank has received the benefit of the complainant's money, and its present assets are thereby increased. There are some decisions of the courts, particularly in cases of suit to recover public funds, that go to the extent of supporting this doctrine, and while the public benefit to be derived from the application of that rule to cases where school and county funds have been misappropriated by banks appeals strongly to the consideration of the court, we are unable to discover that the power to dispense such relief rests upon any of the established principles which govern the action of courts of equity.

There is no recognized ground upon which equity can pursue a fund and impose upon it the character of a trust, except upon the theory that the money is still the property of the plaintiff. If he is permitted to follow it and recover it, it is because it is his own, whether in the form in which he parted with its possession, or in a substituted form. Under the earlier rule, he was required to identify it as the very property which he had confided to another. The newer and more equitable doctrine permits him to recover it from any one not an innocent purchaser, and in any shape into which it may have been transmuted, provided he can establish the fact that it is his property or the proceeds of his property, or that his property has gone into it and remains in a mass from which it cannot be distin-

guished. The earlier English doctrine, as declared in the opinion of Lord Ellenborough in Taylor v. Plumer, 3 Maule & S. 575, in which were reviewed the prior decisions of the English courts, was to the effect that the owner of property intrusted to another could follow and retake the same from the possession of the holder, whether he were agent, bailee, or trustee, or from others who were in privity with him, so long as they were not bona fide purchasers for value, and this irrespective of whether such property remained in its original form or had been changed into some other form, so long as it could be ascertained to be the same property or the proceeds of the same property, but that the right ceased when the means of ascertainment failed, and it was held that such means of ascertainment failed whenever the property was in the form of money, and had been then mixed and confused in a general mass of money of the same description. The more recent doctrine, however, follows the rule announced in Re Hallett's Estate (Knatchbull v. Hallett) 13 Ch. Div. 696, which is that, if money held by one in a fiduciary character has been paid by him to his account at his banker's, the person for whom he held the money can follow it, and has a charge on the balance in the banker's hands, and that if the depositor has commingled it with his own funds at the bank, and has afterwards drawn out sums upon checks in the ordinary manner, he must be held to have drawn out his own money in preference to the trust money, and that if he destroyed the trust fund "by dissipating it altogether, there remains nothing to be the subject of the trust, but so long as the trust property can be traced and followed into other property into which it has been converted, that remains subject to the trust."

The American courts, while uniformly approving the doctrine of that decision, have exhibited a diversity of holding as to its meaning. Some, as we have shown, have interpreted it to mean that, in a suit brought to pursue trust property and affix upon it the character of a trust, it is only necessary to show that the defendant's estate, although insolvent and in the hands of an assignee or receiver for distribution, has actually received the benefit of the trust fund, and that it makes no difference that the plaintiff is unable to show that his fund, or property which represents it, is then in the estate in any form, or has actually come into the hands of the assignee or receiver. Harrison v. Smith, 83 Mo. 216; Jones v. Kilbreth (Ohio) 31 N. E. 346; Independent Dist. v. King, 80 Iowa, 497, 45 N. W. 908; Peak v. Ellicott, 30 Kan. 156, 1 Pac. 499; McLeod v. Evans, 66 Wis. 401, 28 N. W. 173, 214; Plow Co. v. Lamp, 80 Iowa 722, 45 N. W. 1049; Myers v. Board of Ed., 51 Kan. 87, 32 Pac. 658; San Diego Co. v. California Nat. Bank, 52 Fed. 59. Decision in these cases would seem in the main to have been influenced by the consideration that the estate of the insolvent, and thereby the general creditors thereof, must have received the benefit of all trust funds unlawfully used by the insolvent in the course of business or the payment of debts. Said the court in Peak v. Ellicott:

"As the estate was augmented by the conversion of the trust fund, no reason is seen under the equitable principle which has been mentioned why they should not become a charge upon the entire estate."

In Plow Co. v. Lamp, 80 Iowa, 722, 45 N. W. 1049, the court said:

"The creditors, if permitted to enforce their claims as against the trust, would secure the payment of their claims out of trust moneys."

In Harrison v. Smith, the court said, while it would "be impossible to make it a charge upon the estate or assets to the increase or benefit of which it has been appropriated, the general assets of the bank having received the benefit, there is nothing inequitable in charging them with the amount of the converted fund."

We are unable to assent to the proposition that, because a trust fund has been used by the insolvent in the course of his business, the general creditors of the estate are by that amount benefited, and that therefore equitable considerations require that the owner of the trust fund be paid out of the estate to their postponement or exclusion. If the trust fund has been dissipated in the transaction of the business before insolvency, it will be impossible to demonstrate that the estate has been thereby increased or better prepared to meet the demands of creditors, and even if it is proven that the trust fund has been but recently disbursed, and has been used to pay debts that otherwise would be claims against the estate, there would be manifest inequity in requiring that the money so paid out should be refunded out of the assets, for in so doing the general creditors whose demands remain unpaid are in effect contributing to the payment of the creditors whose demands have been extinguished by the trust fund. Both the settled principles of equity and the weight of authority sustain the view that the plaintiff's right to establish his trust and recover his fund must depend upon his ability to prove that his property is in its original or a substituted form in the hands of the defendant. Little v. Chadwick, 151 Mass. 109, 23 N. E. 1005; Cavin v. Gleason, 105 N. Y. 256, 11 N. E. 504; Association v. Austin (Ala.) 13 South. 908; Shields v. Thomas (Miss.) 14 South. 85; Silk Co. v. Flanders (Wis.) 58 N. W. 383; Slater v. Oriental Mills (R. I.) 27 Atl. 443; Bank v. Armstrong, 39 Fed. 684; Multnomah Co. v. Bank, 61 Fed. 912; Massey v. Fisher, 62 Fed. 958.

The decree is therefore affirmed, with costs to the appellees.