BALL v. GERMAN BANK OF CARROLL COUNTY, IOWA, et al.

(Circuit Court of Appeals, Eighth Circuit. May 1, 1911.)

No. 3,452.

1. BANKS AND BANKING (§ 286*)—NATIONAL BANKS—TRANSFERS AFFECTED BY INSOLVENCY.

It was a custom between defendant bank and a national bank in the same town for each to cash checks drawn on the other during the day's business, and after banking hours to take an account of such payments, and for the bank against which the balance was found to give a duebill for the amount, which was taken up on the next day by cash or a draft, and the checks were then surrendered for debit against the drawers. Two drafts given defendant in settlement of such balances on successive days having been dishonored, defendant's president called on the cashier of the national bank after banking hours on Saturday, and requested collateral to cover the amount, which was given, amounting to $5,500. The national bank was then insolvent, and did not again open its doors, and that it could not do so was then known to the cashier. Held that, whatever other remedy it might have had, defendant by demanding collateral elected to affirm the relation of debtor and creditor between the two banks; that the transfer of the collateral by the cashier of the national bank was at least in contemplation of an act of insolvency, and with a view of preferring defendant as a creditor, within the meaning of Rev. St. § 5242 (U. S. Comp. St. 1901, p. 3517), and was void under said section, regardless of whether or not defendant knew the condition of the other bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1111–1113; Dec. Dig. § 286.*]

2. BANKS AND BANKING (§ 287*)—NATIONAL BANKS—ACTIONS BY RECEIVERS.

Where a national bank, after or in contemplation of an act of insolvency, made a transfer of notes to a creditor as a preference, which was void under Rev. St. § 5242 (U. S. Comp. St. 1901, p. 3517), the receiver may at his election maintain an action at law against the creditor for their conversion.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 1089–1127; Dec. Dig. § 287.*]

In Error to the Circuit Court of the United States for the Southern District of Iowa.

Action at law by George C. Ball, receiver of the First National Bank of Carroll, Iowa, against the German Bank of Carroll County, Iowa, and others. Judgment for defendants, and plaintiff brings error. Reversed.

F. F. Oldham (W. R. Lee and E. A. Robb, on the brief), for plaintiff in error.

Benjamin I. Salinger and L. H. Salinger, for defendants in error.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before HOOK and ADAMS, Circuit Judges, and RINER, District Judge.

ADAMS, Circuit Judge. This was an action at law, brought by the receiver of a national bank to recover the value of property alleged to have been transferred by it, before the receivership, to the defendant the German Bank of Carroll County, Iowa, in violation of section 5242, R. S. 1878 (U. S. Comp. St. 1901, p. 3517). At the close of the case each party requested the court to instruct a verdict in its favor. The court refused the request of the plaintiff, and gave that of the defendant, directing a verdict in its favor. Due exceptions were saved by plaintiff to both these rulings, and they are now assigned for error.

[1] There was no substantial conflict in the evidence. This the parties necessarily assumed in making their requests for peremptory instructions. The only question, therefore, for our consideration is one of law: Whether on that evidence the judgment rendered in favor of the defendant was right. Section 5242, supra, provides in substance that any transfer of property by a national bank, made after the commission of an act of insolvency or in contemplation thereof, with a view to prevent the distribution of its assets as provided by law, or with a view to preferring one creditor over another, shall be null and void. If, therefore, the transfer was made (1) to a creditor, (2) with intent to prefer that creditor, and (3) either after the commission of an act of insolvency by the bank making the transfer, or in contemplation of the commission of such an act, the transfer was null and void.

The two banks were doing business in the same town, Carroll, Iowa, and it had been for years a common practice for each to pay checks drawn on the other, and at the close of each business day to take an account of their payments for each other, and for the bank against which a balance was found to give to the other its duebill for that balance, to be liquidated in cash or by draft on the following day. These duebills were regarded merely as temporary evidence of the result of the day's clearance. Upon such liquidation, whether in cash or by draft, the checks paid by either bank were surrendered to the bank upon which they were drawn for debit against the account of the depositor who drew them.

A clearance made on October 13, 1908, pursuant to this general practice, disclosed that the German Bank had overpaid for account of the First National Bank $3,511.56, and a duebill for that amount was executed and delivered to the former by the latter. A clearance of October 15th disclosed that the German Bank had overpaid for account of the First National Bank $2,968.16, and a duebill for that sum was given. On October 14th the First National Bank drew a draft on a correspondent bank at Cedar Rapids, Iowa, for $3,000, payable to the German Bank, and delivered it (probably with a balance in cash) to the German Bank, whereupon the first mentioned duebill was taken up and marked "Paid." On October 15th a like draft was drawn for $2,500, and with it (and probably some additional cash) the second mentioned duebill was taken up and marked "Paid."

Later, on October 17th, after the business of the day had been closed, the president of the German Bank, having been advised of the dishonor of both these drafts by the Cedar Rapids bank, requested the cashier of the First National Bank to give his bank collateral. At that time the president and vice president of the First National Bank were in Chicago, where they had been once before during that week, for the purpose of raising money with which to meet pressing needs of their bank.

The cashier, who remained in charge of the bank, and to whom the request for collateral was preferred, made it clear by his uncontradicted testimony that the bank could not open its doors after that day, and would have to suspend business, if the officers failed to raise the needed money in Chicago. He also testified in effect that he knew, prior to the time of making the transfer to the German Bank, that they had so failed. He then conformed to the request of the president of the German Bank, and indorsed and delivered to him, for his bank, the two bills receivable, the value of which is sued for in this action, and took the following receipt:

"Carroll, Iowa, October 17, 1908.

"Received from the First National Bank, Carroll, as collateral security, the following notes, to wit: Ed. Hageman, $4,000.00; Mr. Krensky, $1,500.00. Said notes deposited to protect the German Bank against any loss that may arise by reason of drafts issued by said First National Bank to said German Bank which have been reported dishonored, amounting to $3,000.00 and one for $2,500.00.          [Signed] J. P. Hess, Pres."

At the time of this transfer the First National Bank was undoubtedly insolvent. It kept its doors open, and, though its cash resources were low, honored all checks, whether few or many we do not know, presented at its counter on and prior to Saturday, the 17th day of October. It did not open for business after that day, but early Monday morning its president committed suicide, the Comptroller of the Treasury took charge, and the receiver was appointed who is now winding up its affairs. Upon this state of things the conclusion is inevitable that at the time the transfer in question was made the German Bank was a creditor of the First National Bank in the sum of $5,500 at least. The parties so treated themselves, and we shall treat them accordingly.

Even if the German Bank could have rescinded the transaction, and taken back the checks which it had turned over to the First National Bank, and resorted to the drawers to enforce a contingent liability against them, no attempt was made to do so. On the contrary, the German Bank affirmed the transaction as made, and took security for the ultimate payment of the money due it. It became a creditor, and attempted to get security for the payment of its debt.

Again, the First National Bank was not only actually insolvent, but its final effort to continue in business had failed. It knew on Saturday evening, when the notes were transferred, that it would not open its doors for business again. In these circumstances it must be charged with knowledge of its own condition, and of the necessary consequence of its act in transferring a substantial part of its assets to secure one creditor, namely, that that creditor would thereby get

a preference over others. This consequence the cashier admits he knew.

In the case of National Security Bank v. Butler, 129 U. S. 223, 9 Sup. Ct. 281, 32 L. Ed. 682, the Supreme Court dealt with a similar situation, and there said:

"The undisputed facts of the case showed that the act of the cashier could, under the circumstances, have no other result, if allowed to stand, than to operate as a preference in favor of the Security Bank; that the Pacific Bank had decided to close its doors and to go into liquidation; that after that the necessary consequence of the transfer was to create a preference," etc.

In passing it may properly be observed that defendant's knowledge or want of knowledge of the condition of the First National Bank, or of the intentions or purposes of its officers, is quite immaterial. The statute (section 5242) does not make them an element affecting the liability of a transferee. National Security Bank v. Butler, supra.

Having already concluded that the transfer in question was made to a creditor, and with the intent of preferring that creditor over others, it only remains to ascertain whether it was so made, either after the commission of an act of insolvency or in contemplation of such an act. There is much reason to hold that the drawing of the two drafts on the Cedar Rapids bank and delivering them to the German Bank at a time when the First National Bank had no funds to its credit in that bank was an act of insolvency. It can with difficulty be conceived that a solvent bank could, in the due and ordinary course of business, do such an act. It can scarcely be accounted for, except on the theory of financial distress. The evidence that the First National Bank thought it had funds there and drew the drafts by mistake can hardly prevail against the presumption, that ought to be indulged in important banking transactions, that a bank knows where its funds are deposited.

We, however, need not rest our decision of this case on any doubtful matter of presumption. After carefully weighing the evidence, we are unable to reach any other conclusion than that the transfer was made at least *in contemplation of an act of insolvency*. The final closing of its doors for business on Monday morning, October 19th, taken in connection with the fact of actual insolvency and inability to go on with the business in the usual course, was clearly an act of insolvency by the First National Bank. This cannot be doubted. Roberts v. Hill (C. C.) 24 Fed. 571, 573; Hayden v. Chemical Nat. Bank, 28 C. C. A. 548, 84 Fed. 874, 876. The bank was not then continuing in the due and ordinary course of its business, as appeared to be the fact in McDonald, Receiver, v. Chemical National Bank, 174 U. S. 610, 19 Sup. Ct. 787, 43 L. Ed. 1106. On the contrary, there had been a final cessation of business. As a result of the failure to get money in Chicago, the bank was not again to open for business. "It had" in effect, "decided to close its doors and go into liquidation," and is therefore brought directly within the rule announced in National Security Bank v. Butler, supra, and its acts done thereafter were clearly done in contemplation of an act of insolvency.

Learned counsel contend that the transfer of the notes in question

187 F.—48

to the defendant was made in good faith and for a present fair consideration; that the transaction from October 13th to 17th was one and indivisible, contemplating the retention in the German Bank of title to the checks they had taken up, until redeemed by the First National Bank upon which they were drawn. Defendant's view would have had persuasive force, and might have prevailed, if the parties had so intended, and had so treated the transaction; but the fact appears to be otherwise. They did not do so. As already pointed out, the giving and receiving of collateral security for defendant's claim was a recognition of the existence of the relationship of debtor and creditor between it and the First National Bank.

[2] It is also contended that plaintiff mistook his remedy. That his action should have been in equity to set aside the transfer of the notes and restore them to the receiver, and not an action at law for a conversion. To this, also, we are unable to agree. The defendant had in its possession the notes, the transfer of which was void under the law. They belonged to the plaintiff, but defendant appropriated them to its own use. They had a fixed value, which afforded a ready measure of damages, and we perceive no reason why an action at law for their conversion was not available to plaintiff. That action was resorted to without complaint or criticism in the National Security Bank Case.

Other contentions of defendant's learned counsel have been carefully considered; but, in view of the conclusions reached on the facts of the case, they must be held untenable. The judgment is reversed, and the cause remanded for a new trial.

It is so ordered.