**AMERICAN SURETY CO. OF NEW YORK v. JACKSON. \***

Circuit Court of Appeals, Ninth Circuit. March 19, 1928.

No. 5324.

**1. Banks and banking ⬅286—Withdrawal of city funds by bank cashier as city treasurer immediately preceding bank's suspension of business held void (12 USCA § 91).**

Under Rev. St. § 5242 (12 USCA § 91), action of cashier of bank, who was also city treasurer in removing city funds immediately preceding suspension of business, held void, precluding subsequent recovery by surety against receiver securing return of such funds.

**2. Banks and banking ⬅80(7)—City cannot claim any preference as to funds deposited in bank creating relation of debtor and creditor.**

Where relation of debtor and creditor exist between city and bank relative to deposit of city funds, neither city nor those claiming under it can claim any preference over general creditors.

**3. Banks and banking ⬅80(7)—City may recover deposits made in violation of law from bank's receiver, if not theretofore paid out or dissipated.**

Where deposits of city funds are made by city treasurer in violation of state law, bank becomes a trustee, and city, or those claiming under it may recover amount of trust fund from bank's receiver unless theretofore paid out or dissipated.

**4. Banks and banking ⬅80(7)—Surety becoming subrogated to rights of city may recover funds unlawfully deposited by city treasurer (Idaho Laws 1921, c. 256, superseding Idaho Laws 1893, p. 111).**

Where cashier of bank in capacity of city treasurer deposited city funds in bank, not fur-

*Rehearing denied May 7, 1928.

nishing bond required by Idaho Laws of 1921, c. 256, superseding Idaho Laws of 1893, p. 111, the funds were deposited in violation of laws of state, authorizing recovery by surety becoming subrogated to rights of city and treasurer as against bank and receiver.

**5. Banks and banking ⬅80(2)—On proof that trust funds came into hands of receiver, bank has burden of proving wrongful misappropriation or criminal use of funds.**

Where surety subrogated to rights of city and city treasurer to recover deposit of city funds as a trust fund proved that sum came into hands of receiver when bank suspended, burden was on bank to prove that such trust funds or part of them were in fact wrongfully misappropriated or criminally used, there being a presumption that trust funds have not been so wrongfully misapplied or criminally used by officers.

**6. Banks and banking ⬅80(2)—City treasurer will be presumed to have deposited only cash as bearing on question of augmentation of funds.**

In suit by surety, subrogated to rights of city and city treasurer to recover trust funds from insolvent bank, it will be presumed, in absence of proof to the contrary, that city treasurer obeyed law and deposited nothing but cash or equivalent of cash, as bearing on question as to whether there was augmentation of funds in bank.

Dietrich, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Southern Division of the District of Idaho; Charles C. Cavanah, Judge.

Suit by the American Surety Company of New York against H. D. Jackson, receiver of the Payette National Bank. Decree of dismissal, and plaintiff appeals. Reversed and remanded for a new trial.

Richards & Haga, of Boise, Idaho, for appellant.

Scatterday & Stone, of Caldwell, Idaho, and Frank T. Wyman, of Boise, Idaho, for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

RUDKIN, Circuit Judge. From 1917 until the latter part of 1924, Carl E. Larson was city treasurer of the city of Payette in the state of Idaho and also cashier of the Payette National Bank. During that period the funds of the city were deposited by the city treasurer in the bank of which he was cashier. In 1917 the laws of the state provided that the city treasurer might be required to keep all moneys in his hands belonging to the municipality in such place or places of deposit as might be provided by ordinances, but no ordinances should be passed by which the custody of public money should

be taken from the custody of the city treasurer and deposited elsewhere than in some regularly organized bank, nor without a bond to be taken from the bank, in such penal sum and with such security as the council or board of trustees might direct and approve, sufficient to save the municipality from loss. Laws of 1893, p. 111. Pursuant to this statute, in August, 1917, the Payette National Bank executed a bond in the penal sum of $15,000 to the city treasurer, conditioned that the bank would safely keep and upon demand well and truly pay or cause to be paid all orders for city money, and would well and truly turn over and deliver all city money so deposited upon proper demand. In 1921 the Legislature of the state enacted a general depository law which differed materially from the act of 1893. Laws of 1921, p. 557. Two different depository bonds were submitted by the depository under this act, but the bonds so submitted were rejected for one reason or another, so that no depository bond was in fact executed or given as required by law. On November 15, 1922, the depository bank became insolvent and suspended payment, and the defendant, Jackson, was later appointed receiver by the Comptroller of Currency. When the bank closed its doors, it had on deposit the sum of $4,322.77 belonging to the city. Just before the bank suspended, Larson, as city treasurer and cashier of the bank, took the amount due the city from the funds in the vault of the bank, placed it in a sack, and transferred the sack to another bank. This money was later returned to the depository bank at the request of the bank examiner or receiver. The city of Payette then brought suit against the city treasurer and the American Surety Company, as surety on his official bond, to recover the loss sustained by the failure of the bank, and judgment was given in favor of the city. This judgment was satisfied by the surety, and the surety thereby became subrogated to all rights of the city of Payette and its treasurer as against the bank and its receiver. The present suit was thereupon brought by the surety against the receiver of the bank to recover the amount of the judgment, less two dividends paid thereon. The complaint contains two causes of action— the first based on the theory that the money was wrongfully and illegally deposited in the bank by the city treasurer in violation of the laws of the state, and the bank thereby became a trustee of the funds so deposited; and the second on the theory that the plaintiff had a right, in any event, to recover the money removed from the bank by the city

treasurer and afterwards restored to the bank at the request of the bank examiner or receiver. From a decree of dismissal, the present appeal has been prosecuted.

[1] Little need be said as to the second cause of action. The funds were removed from the bank when it was known to be insolvent, and, if the relation of debtor and creditor then existed, such withdrawal was clearly void under the express provisions of section 5242 of the Revised Statutes (12 USCA § 91), which provides that all payments of money made after the commission of an act of insolvency, or in contemplation thereof, with a view to prevent the application of its assets in the manner prescribed by law, or with a view of preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void. National Security Bank v. Butler, 129 U. S. 223, 9 S. Ct. 281, 32 L. Ed. 682; Corbin v. Mumford (D. C.) 148 F. 37; Ball v. German Bank (C. C. A.) 187 F. 750.

[2-4] We will now return to the first cause of action. If the city funds were lawfully deposited in the depository bank, the relation of debtor and creditor existed between the city and the bank, and it is well settled that neither the city nor those claiming under it can under such circumstances claim any preference over general creditors. On the other hand, if the deposits were made by the city treasurer in violation of the laws of the state, it is equally well settled that the bank became a trustee, and that the city, or those claiming under it, may recover from the receiver the amount of the trust fund, if less than the amount of cash coming into his hands at the inception of the receivership, unless it is made to appear that some portion of the trust fund had theretofore been paid out or dissipated by the bank. Spokane County v. First Nat. Bank (C. C. A.) 68 F. 979; Merchants' Nat. Bank v. School District No. 8 (C. C. A.) 94 F. 705; Smith v. Mottley (C. C. A.) 150 F. 266; Board of Com'rs v. Strawn (C. C. A.) 157 F. 49, 15 L. R. A. (N. S.) 1100; In re J. M. Acheson Co. (C. C. A.) 170 F. 427; Titlow v. McCormick (C. C. A.) 236 F. 209. We do not understand that this rule is controverted. Indeed, it is so firmly established by the decisions of this and other courts that the question is no longer an open one. It seems quite clear to us that the city funds were deposited in violation of the laws of the state. We think the Depository Act of 1921 superseded the act of 1893, but, if it did not, the bond executed in 1917 did not satisfy the requirements of the act of 1921. The fact that the bond was

made payable to the city treasurer instead of to the municipality would perhaps be immaterial, but the bond given was a personal one and the sureties only justified in the amount for which they became liable, whereas under the Depository Act of 1921 sureties on personal bonds must justify in double that amount. There are other differences to which we need not refer, because under the provisions of the act of 1921 the city treasurer is not liable personally or on his official bond for any moneys that may be lost by reason of the failure or insolvency of any bank which becomes a depository under the law, and in this case a recovery was had against the treasurer and the surety on his official bond on the express ground that the depository law had not been complied with.

The case was submitted to the court below on a mere showing that a sum in excess of the demand in suit came into the hands of the receiver when the bank suspended. The appellant contends that the burden then shifted to the appellee to show that some part of the trust funds had been paid out or dissipated by the bank, while the appellee contends that the burden was still on the appellant to show that such was not the fact. In Spokane County v. First Nat. Bank, supra, this court said:

"If it had been alleged in the bill that at the time of its failure the bank held a sum of money equal to or less than the amount here sued for, the court might lawfully presume that sum to be of the public funds of Spokane county, since it will be presumed that trust funds have not been wrongfully misappropriated or criminally used by the officers of the bank."

In Merchants' Nat. Bank v. School District No. 8, supra, we said:

"In the former case it was held that the depositor of a fund intrusted to a bank, by which it has been misapplied, is not entitled to a general lien upon the assets of the bank for the repayment thereof, but that he can follow the same, so far as it can be traced in the possession of the bank, either in its original form or in forms to which it has been converted, or into a general fund, with which it has been commingled, and that his right to recover it in the latter instance will depend upon whether or not a sum of money still remains in the possession of the bank equal to the amount so due him; it being the presumption of the law that, if moneys have been disbursed out of such fund, it was the money which the bank had the right to pay out, and not the money which was intrusted to it in a fiduciary capacity."

To the same effect, see Moreland v. Brown (C. C. A.) 86 F. 257.

In Smith v. Mottley, supra, the Circuit Court of Appeals for the Sixth Circuit held that the burden of showing that his property had been wrongfully mingled in the mass of the property of the wrongdoer was on the owner who sought to follow it, but, when this was done, the burden shifted to the wrongdoer to show that the money or property had passed out of his hands, and that his trustee in bankruptcy stood in the same position. This ruling was reaffirmed in Board of Com'rs v. Strawn, supra, Judge Lurton saying:

"But the later cases have met this difficulty in the case of blended moneys in a bank account, from which there have been drawings from time to time, by the fiction that the sums thus drawn out were from the moneys which the tort-feasor had a right to expend in his own business, and that the balance which remained included the trust fund which he had no right to use. It was upon this fiction that Knochball v. Hallett, 13 Ch. Div. 696, 726, et seq., was decided. That case was approved in National Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693, and has been followed in many subsequent cases when the trust fund has consisted of moneys on deposit. Smith v. Mottley [C. C. A.] 150 F. 266. But as this is a mere presumption it will not stand against evidence."

[5] It will thus be seen that the rule itself rests largely on a legal fiction. But, if there is a presumption that trust funds have not been wrongfully misapplied or criminally used by the officers of the bank, as held by this court in the Spokane County Case, supra, and such a presumption no doubt obtains, it would seem to follow as a necessary corollary that the burden was on the bank or its successor in interest to prove that the trust funds or some part of them were in fact wrongfully misappropriated or criminally used by the bank. This presumption in nowise conflicts with the rule that in the end the claimant must trace the funds and establish his claim thereto by clear and satisfactory proof as against the receiver who represents all creditors.

[6] It was stipulated at the trial that the city treasurer made certain deposits in the depository bank from time to time; that the appellant was unable to show the form of the deposits, whether consisting of checks upon the depository bank or on some other bank, or whether consisting of cash, or partly of cash and partly of checks, and, if checks drawn on some other bank were deposited,

the appellant was unable to show whether the depository bank received cash or credit for the same. Because of this stipulation it is contended that the city treasurer may have deposited checks on the depository bank, or on some other bank, for which the depository bank was simply given credit, and that in such case there would be no augmentation of the funds in the bank. But, in the absence of proof to the contrary, we must presume that the city treasurer obeyed the law and that he accepted and deposited nothing but cash, or the equivalent of cash.

On the entire record we are therefore of opinion that the appellant established its claim to the funds in controversy. The ends of justice will be best subserved, however, by remanding the cause to the court below for a new trial, thus permitting the appellee to prove, if able to do so, that the trust funds, or some part thereof, were paid out or dissipated by the bank, within the meaning of the rule adopted and applied by this court. Reversed accordingly.

DIETRICH, Circuit Judge (dissenting). The allegation of the complaint is that the treasurer, having in his possession moneys belonging to the city, illegally "placed" the same in the bank, and that, when the receiver took charge, he took possession of "said moneys of the city of Payette, placed in said Payette National Bank as aforesaid in the amount of $4,322.77." The burden was on the plaintiff to trace the fund. Schuyler v. Littlefield, 232 U. S. 707, 713, 34 S. Ct. 466, 58 L. Ed. 806. That there was a total failure, by the evidence adduced, to identify the $4,322.77 as money so deposited, cannot be denied. There is no evidence that at any time the treasurer placed any money in the bank, or that upon any date prior to the day it closed it had on hand money in any amount.

But this want of evidence we are asked to supply by indulging three presumptions. We are first to presume that the credits shown by the bank books were for money brought to and placed in the bank by the treasurer. Upon the assumption that it was the treasurer's legal duty to accept nothing but money, the argument is that we should presume he obeyed the law, and hence had nothing to deposit other than money. But how, without offending reason, can we indulge a presumption of such official regularity relative merely to an incidental feature of a general plan and practice under which it is affirmatively shown the officer in question was acting in violation of the law and with an unlawful purpose? To amplify:

The principal source of revenue for an Idaho city is property taxes. These taxes are not collected by the city officers, but by the county treasurer, who from time to time makes settlement with the city treasurer. Under the general depository law of the state, the county treasurer is authorized to make a general deposit of public funds coming into his hands in qualified depository banks. On making such deposit the same relation arises between him and the bank as exists between a private depositor and his bank (that is, the relation of debtor and creditor); and he is authorized by law to draw upon his account by check. When, therefore, from time to time the county treasurer transferred to the treasurer of the city of Payette his tax collections upon its account, he was guilty of no wrong in doing so by check, and the city treasurer was guilty of no wrong in accepting the check.

Having in mind the illegal arrangement under which the bank here was receiving and handling the city funds, are we, against all reasonable probability of fact, to presume as a matter of law that in such a case the city treasurer went to the trouble of actually procuring the money upon the check in order that he might comply with the law requiring him to keep the city's funds intact, when it is affirmatively shown that such was not his desire, purpose, or practice? Every reasonable inference from the facts shown negatives such presumption, and renders it highly probable that, upon receiving such a check, whether drawn upon his or some other bank, he deposited the check and took credit therefor; and in neither case would the transaction necessarily result in augmenting the bank's cash.

Upon the presumption that the treasurer deposited only money, we are next asked to presume that the bank did not pay it out, and hence that it was on hand when the receiver took charge; the argument being that generally there is a presumption of legality of action. But how can such a general presumption prevail against the admitted facts? It is affirmatively shown that both the treasurer and the bank had agreed and entered upon a line of conduct, the object of which was to enable the bank to use the money as it would use any other money coming in on general deposit. Not only in the face of the presumption that they would act legally, the evidence shows they in fact acted illegally, in carrying the deposits in a general account and commingling them with other moneys of the bank, but the natural consequence of such conduct would be the disbursement of such funds in usual course, and men are

ordinarily presumed to intend the natural consequences of their acts. Can it be doubted that, even in a criminal case, the evidence would sustain a verdict against the treasurer and participating bank officials on a charge of misapplying the city's funds? In view of this state of the record, it is unnecessary to consider to what extent certain expressions to be found in cases cited from this court, mainly used arguendo, tend to sustain the contention that some sort of a presumption exists under some other set of circumstances, for by no one is it suggested that, if one there be, it is irrebuttable.

The third presumption we are asked to indulge, I concede, is legitimate and well established; that is, if the treasurer wrongfully brought city money into the bank upon general deposit and the bank wrongfully commingled it with its own funds, and it further appeared that at no time did the cash on hand fall below the amount so deposited, it would be presumed that the cash passing to the receiver, up to the amount of such deposit, was city money. The presumption rests upon a measure of reason, and is justified by considerations of necessity. In such a case the inference that, where the bank pursues a course of unlawfully receiving on general deposit and commingling with its own funds public moneys, its purpose is to apply them to its own use, is rebutted by affirmative proof that in fact it has not so intended, because it has always kept available cash sufficient to cover the public deposit. And the notion that a fund so shown to have been continuously on hand, includes the public deposits, rests not only upon the presumption of legal regularity, but, in so far as it is a fiction, upon considerations of necessity arising out of the bank's misconduct; that is, where one has wrongfully commingled with his own the property of another, such as money or grain, so that identification and segregation are impossible, the innocent party is of necessity relieved from making proof which in the nature of things would be impossible. Such is the holding and the extent of the holding in Smith v. Mottley (C. C. A.) 150 F. 266, cited by appellant, where the court twice refers to the fact that it was affirmatively shown the money in question had been received by the bank and that thereafter the cash continuously exceeded the amount thereof. But no such necessity exists in respect to proof of what the treasurer brought into the bank, or the continuity of cash therein; as to those issues, proofs are available, and quite as accessible to one party as to the other. I see no reason why we should, by a pyramid of presumptions, shift the burden from the plaintiff, where it naturally belongs, and impose it upon the general creditors, who are blameless.

I think the judgment should be affirmed.