JOSEPH KLEMM, PLAINTIFF-RESPONDENT, v. LABOR CO-OPERATIVE NATIONAL BANK OF PATERSON, AND ADRIAN K. HAMILTON, FRED HOELSCHER AND JAMES STARR, AS TRUSTEES THEREOF, DEFEND-ANTS-APPELLANTS.

Submitted May 29, 1936—Decided October 26, 1936.

For the appellants, *Harry Joelson* (*Edward F. Merrey,* of counsel).

For the respondent, *Cohn & Kohlreiter* (*Peter Cohn,* of counsel).

The opinion of the court was delivered by

HEHER, J. The primary question for decision is whether, as averred in the complaint, a special contract of bailment

arose in respect of a portion of moneys concededly deposited by plaintiff with defendant bank upon general account. Conceiving the evidence to be in conflict, the trial judge submitted the issue to the jury; and it was resolved in favor of the plaintiff depositor. As to the moneys thus claimed, the depositary was found to be a bailee. By a motion to nonsuit and exceptions to the charge, the defendant bank challenged the existence of any evidence to support this finding of fact and the consequent judgment.

These are the pertinent facts and circumstances: On January 3d, 1929, the plaintiff depositor opened a savings account with the defendant bank, organized under the National Bank act. 12 *U. S. C. A.*, §§ 21 *et seq.* On February 24th, 1933, when the sum to his credit in the account totaled $4,147.13, he called at the bank, presented his pass book to the teller in charge and demanded payment of $4,000 so credited to him. While he testified that he entertained what he conceived to be a substantial doubt as to the bank's solvency, and for that reason decided to withdraw the sum in question and satisfy a mortgage on a property owned by him in Mount Vernon, New York, he did not communicate his fears to the teller, nor in anywise suggest this asserted underlying reason for the proposed withdrawal. He informed that officer that his purpose was to liquidate the mortgage referred to. The teller, reminding him of the risk of loss if the withdrawal were made in currency, proposed that he make payment of the required sum by checks drawn upon the account. The depositor promptly acquiesced in the suggestion, and signed two checks upon the account, each in the sum of $2,000. The teller pursued what the proofs disclose was the customary banking practice where checks upon a savings account are to be honored without presentation of the pass-book. He endorsed the checks "O. B. February 24, 1933—G. P. D. charge Book No. 17217," which in banking parlance means "taken off the book," and, without effecting a change in the basic relationship, obliges the bank to honor the checks when presented for payment, properly endorsed, without the pass-book. The understanding was that these checks would be delivered to the mortgagee in satisfaction

of the mortgage, and used by him in the customary manner of commercial checks. The teller noted the withdrawals on the pass-book, and there the transaction ended so far as the bank's books of account were concerned. But the depositor quoted the teller as saying: "We are taking this $4,000 off your book and we will put it on the side, and any time these checks is (*sic*) going to come in they will be paid." On cross-examination, he said the teller undertook "to put that money on the side, from all other moneys—in a trust fund, that nobody can use that money, not even the bank can use it." The uncontradicted evidence is that there was no segregation of a fund to meet these checks upon presentment, nor was there any transfer of the moneys upon the bank's books to any other account. There were no ledger or other book entries. In the normal course, these were not required until the payment of the outstanding checks. The depositor intended to journey to Mount Vernon within the week for the purpose of delivering the checks to his mortgagee, but the plan was frustrated by illness. On March 6th, 1933, before his recovery, the bank was closed by the president's proclamation of a bank holiday, and did not re-open because of insolvency. It was taken over by the comptroller of the currency, who designated a conservator to take charge of its affairs. The depositor's demand upon the conservator for payment of the checks was refused.

National banks are agencies of the federal government, created for public purposes, and are subject to the paramount authority of the congress. Regulation conflicting with federal laws is beyond the sphere of legitimate state action. The National Bank act (12 *U. S. C. A.,* §§ 91, 194) embodies a policy of uniformity in the treatment of the depositors of an insolvent bank, and, in particular, a ratable division of its assets. The courts of federal jurisdiction, whose adjudications are of course controlling, have given rigid adherence to this concept, so much so that the ratable distribution provision of section 194 of the act has been construed as effecting repeal of an earlier statute granting a general preference to the United States on the insolvency of its debtor. *Jennings* v. *United States Fidelity and Guaranty Co.,* 294 *U. S.* 216;

55 *S. Ct.* 394; 79 *L. Ed.* 869; *Old Company's Lehigh* v. *Meeker*, 294 *U. S.* 227; 55 *S. Ct.* 392; 79 *L. Ed.* 876; *Davis* v. *Elmira Savings Bank,* 161 *U. S.* 275, 290; 16 *S. Ct.* 502; 40 *L. Ed.* 700; *Texas and Pacific Railway Co.* v. *Pottorff*, 291 *U. S.* 245; 54 *S. Ct.* 416; 78 *L. Ed.* 777; *Cook County National Bank* v. *United States,* 107 *U. S.* 445; 2 *S. Ct.* 561; 27 *L. Ed.* 537. In the last cited case, Mr. Justice Field said that the ratable division section of the act "provides for the distribution of the entire assets of the bank, giving no preference to any claim except for moneys to reimburse the United States for advances in redeeming the notes." The primary consideration underlying this policy is the necessity of maintaining unimpaired public confidence in the fairness and impartiality of the national banking laws and the administration of the system. *Texas and Pacific Railway Co.* v. *Pottorff, supra; Davis* v. *Elmira Savings Bank, supra.*

The fundamental deficiency in the depositor's claim to a preference is that a trust *res* did not result from the transaction in question. The relation of debtor and creditor, arising from the general deposit, was not converted into one fiduciary in character. The money in question had not been paid over the counter as a special deposit, thereby imposing upon the teller, under the doctrine of a continuing trust, the duty of maintaining the fund intact, apart from the bank's other assets. See *Blakey* v. *Brinson*, 286 *U. S.* 254, 262; 52 *S. Ct.* 516; 76 *L. Ed.* 1089; 82 *A. L. R.* 1288. There was no augmentation of the bank's assets. Nor was there segregation in fact of a fund which, by force of the special contract, the bank could not thereafter treat as its own. There was in fact no dedication of currency to the trust asserted by the depositor. There was no sum set apart in respect of which title passed from the bank to the depositor—a characteristic of a bailment and the deposit on special account. These considerations have been held by the supreme federal judicial authority to be dispositive of the depositor's claim to a preference after insolvency. *Jennings* v. *United States Fidelity and Guaranty Co., supra; Old Company's Lehigh* v. *Meeker, supra; Davis* v. *Elmira Savings Bank, supra; Texas and Pacific Railway Co. v. Pottorff, supra.* See, also, *Standish*

v. *Babcock*, 52 *N. J. Eq.* 628; *James* v. *Aller*, 66 *Id.* 69; *Jaffray* v. *Towar*, 63 *Id.* 530; *Perry on Trusts and Trustees* (*7th ed.*), § 828.

Nor will the transaction be viewed as if the depositor had actually withdrawn the sum in question, and had redeposited it under the asserted special agreement. This is not what occurred. For aught that appears, it may well be that the bank, conscious of its insolvency, would have declined to permit the actual withdrawal of the money if the depositor had insisted upon it. It is pertinent here to point to testimony by the depositor reasonably tending to show that, when he made known his intention, the teller conferred immediately with one of the bank's executives. In *Old Company's Lehigh* v. *Meeker, supra,* Mr. Justice Cardozo, dealing with a somewhat similar contention, said: "The petitioner insists that the transaction must be viewed as if Brewer, the depositor, had withdrawn $3,015 in coin or other currency, and had paid it back to the bank to apply upon the note. But that is not what happened. The bank, aware of its insolvency, might have been unwilling to pay out the coin, even if Brewer had demanded it, when the effect of the payment would have been to prefer one creditor over others. *Rev. Stat.,* § 5242; *U. S. C., tit.* 12, § 91; *National Security Bank* v. *Butler,* 129 *U. S.* 223; 32 *L. Ed.* 682; 9 *S. Ct.* 281; *McDonald* v. *Chemical National Bank,* 174 *U. S.* 610, 618; 43 *L. Ed.* 1106, 1109; 19 *S. Ct.* 787; *Roberts* v. *Hill* (*C. C.*), 23 *Blatchf.* 312; 24 *Fed. Rep.* 561. * * * We indulge in nothing more than guesswork when we assume that the transaction would have been carried through at all if bank or depositor had insisted that it receive another form. *Cf. Hecker-Jones-Jewell Mill. Co.* v. *Cosmopolitan Trust Co.,* 242 *Mass.* 181, 187; 136 *N. E. Rep.* 333; 24 *A. L. R.* 1148. Form is closely knit to substance when a bank, at the end of its resources, is about to close its doors."

And in *Stonebraker* v. *First National Bank of Arcadia,* 76 *Fed. Rep.* (*2d*) 389, the plaintiff tendered to the defendant bank, in payment of his note which the bank had rediscounted and did not then possess, a check drawn by a third person to his order on an account in that institution, which

contained sufficient funds to meet it. Plaintiff had been a depositor in the bank, but his account had been checked out. With the bank's consent, he deposited the check for the purpose of paying the note when returned. Notwithstanding the agreement, the bank credited the check on his old account; it "was not set aside as a special deposit for the purpose intended, and no funds were segregated and dedicated to the payment of the note." The bank was closed for insolvency two days later, before the note was returned; and plaintiff instituted suit to recover the amount of the check out of the assets of the insolvent bank as a "preference over general creditors." The Circuit Court of Appeals for the Fifth Circuit, in denying the right of recovery, said: "It is clear that, while appellant intended to pay his note out of his deposit, and this was understood by the bank, the bank did not treat it as a special deposit, did not set aside any funds, and a trust was not created. The relationship established between the Arcadia Bank and appellant was merely that of debtor and creditor, creating no lien on the assets in the hands of the receiver. Appellant was not entitled to be paid by preference over other ordinary creditors."

A less rigorous application of the provision in question would tend to frustrate the manifest policy of the statute. It results that, on the evidence adduced, defendants were entitled to a nonsuit.

We need not consider whether, in the circumstances here presented, the depositor may in equity fasten a lien or impress a trust upon the assets of the bank. See *Jennings* v. *United States Fidelity and Guaranty Co., supra; Old Company's Lehigh* v. *Meeker, supra; Perry on Trusts and Trustees (7th ed.)*, §§ 828, 843.

The judgment is accordingly reversed.

*For affirmance*—THE CHIEF JUSTICE, DEAR, JJ. 2.

*For affirmance as to bank*—PARKER, J. 1.

*For reversal*—THE CHANCELLOR, TRENCHARD, LLOYD, CASE, BODINE, HEHER, PERSKIE, HETFIELD, WELLS, WOLFS-KEIL, RAFFERTY, COLE, JJ. 12.