## BRILL et al. v. McINNES.

(Circuit Court of Appeals, Eighth Circuit. August 7, 1926.)

No. 7217.

Banks and banking ⟐⟐286—Giving security to prevent withdrawal, when, if officer considered situation, he must have seen failure was inevitable, was transfer for preference, in violation of statute (Rev. St. § 5242 [Comp. St. § 9834]).

Security given by bank when insolvent to keep depositor from withdrawing deposit, when, if officer who gave it had stopped to consider the condition, he must have seen failure was inevitable, was transfer in contemplation of insolvency with view to preference, in violation of Rev. St. § 5242 (Comp. St. § 9834).

Appeal from the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Suit by W. J. McInnes, receiver, against Nicholas Brill and another. Decree for plaintiff, and defendants appeal. Affirmed.

Tomlinson Fort, of Roswell, N. M. (Hiram M. Dow, of Roswell, N. M., on the brief), for appellants.

R. D. Bowers, of Hagerstown, Md., for appellee.

Before SANBORN, Circuit Judge, and WOODROUGH and SCOTT, District Judges.

WOODROUGH, District Judge. The appellant, Nicholas Brill, had a special deposit of $16,000 in the Citizens' National Bank of Roswell, which he had allowed to remain in the bank over a period of years drawing interest. Shortly before the bank went into the hands of a receiver, Brill heard rumors that the bank was going to close, and manifested his anxiety to the managing officer in charge. The officer, in order, as he says, to satisfy Brill, so that he would not check out the account, as he was afraid Brill would do, gave Brill a note and mortgage, belonging to the bank, to secure the special deposit. The trial court found that the security thus given for the special deposit was given by the bank, not in the ordinary course of business, but was a transfer in violation of section 5242, Revised Statutes (Comp. St. § 9834), in that it was a transfer made in contemplation of insolvency, with a view to the preference of one creditor to another, and the same was avoided.

By appropriate assignments of error the appellant challenges the findings and judgment of the trial court, insisting that the evidence fails to show that the bank was insolvent at the time when the security was given, or that the officers acted in contemplation of insolvency, or with a view to prefer Brill to other creditors. The giving of the security to Brill occurred on August 15, 1923, and the condition of the bank from the beginning of that year up to and including the date in question was fully developed by the testimony taken on the trial. The officer of the bank who acted in the transaction and another principal officer testified that at the time in question they did not believe the bank to be insolvent, and that they believed it was solvent and would continue its ordinary operations.

On the other hand, it appears that in the preceding February a federal bank examiner had declared the bank's capital impaired to such an extent that an assessment of 100 per cent. must be paid in by stockholders to avoid receivership. It also appears that in the same month an agreement was signed up between the bank, the Federal Reserve Bank, and other financial institutions, which recited that the bank was rendered insolvent by reason of losses determined by the bank examiners in the amount of $527,000. This writing further incorporated a tentative plan to put the affairs of the bank on a satisfactory basis, and was also signed by a representative of the Comptroller of the Currency, apparently to indicate the approval of that department. The Federal Reserve Bank and the other institutions, parties to the writing, agreed to grant certain indulgences in the matter of interest on the Roswell bank's obligations to them, and to allow the bank a line of credit within certain limits, and on its part the bank agreed to improve its condition in specified ways. It is very doubtful whether immediate and full compliance by the bank with its agreement at that time would have rendered it solvent, because the amount of losses which the bank had theretofore sustained was actually much greater than recited in the agreement.

But, however that may be, it is very clear that, when the transfer was made to Brill in August following, the condition of the bank was worse, and its insolvency more apparent, than at any time covered by the testimony. At about the same time, probably on the same day, that the transfer was made to Brill, a transaction identical in substance was carried

out with another depositor, Sutherland, who also had a deposit of $11,611.89, and in the opinion of the receiver the bank would have had to close its doors at that time, if the two depositors had been paid, instead of secured. The sum of the two deposits was only $11,000 less than the total cash exchange and reserve then left to the bank, and in view of its general condition that sum would not have permitted continuance of its ordinary business. It had not made any new loans for three years, and had practically no quick assets, while its deposits were constantly being withdrawn and its outstanding obligations were very large.

The receiver classified as worthless the security transferred to Brill, while that transferred to Sutherland was doubtful, and of a probable value of some 30 per cent. of its face, and although the bank did succeed thereafter in obtaining some $35,000 or $40,000 of additional rediscounts on its other paper, the correspondence in evidence reflects the desperate struggle by which this was accomplished and that uncertainties attended the transactions. The bank did not suffer an actual run upon it prior to the time of the transfer, in the sense that no crowd of depositors congregated at its doors; but from January 15, 1923, to August 14, 1923, the date of the transfers, the deposits fell off from $963,365.95 to $564,763.87, and the relation between the amount of deposits and loans and rediscounts was consistently more unfavorable to the bank. Another consideration of importance is the loss that had been suffered by the bank during the year by the retirement and death of several of its principal officers.

To restate in detail the figures reflecting the condition of the bank would unduly extend the opinion. The conclusion is irresistible that it was hopelessly insolvent at the time of the transfers, and that, if the officer who made them had stopped to consider the condition, he must have seen that failure was inevitable. The evidence fully sustains the findings of the trial judge, and the trial judge properly applied to the case the principles announced in Roberts v. Hill (C. C.) 24 F. 576. It is clear in this case, as expressed by Judge Wheeler in that case, that "the hopeless insolvency of the bank was within the contemplation of the officers, if they would contemplate it. That they did not, should not, it seems, take the case out of the statute. The insolvency of the bank was before them, and, with it before them, they gave this creditor a preference. This now appears to be within the statute."

The decree of the trial court is affirmed.