## SMITH v. BALDWIN.
### No. 6063.

Court of Appeals of the District of Columbia.
Argued Jan. 11, 1934.
Decided Feb. 12, 1934.

G. Bowdoin Craighill and Basil D. Boteler, both of Washington, D. C., for appellant.

Swagar Sherley, Frederick DeC. Faust, and Charles F. Wilson, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellant, Smith, on February 27, 1933, was an assistant cashier of the Commercial National Bank in Washington. He was also executor of the estate of Gertrude L. Hoffman, who had died in March, 1931. Since before June, 1932, Smith had kept on deposit in the bank to his credit as executor slightly more than $30,000. On the date first mentioned, Smith immediately, after the opening of the bank, withdrew this entire balance and also at the same time withdrew the entire balances, aggregating $853, of two savings accounts to his credit as trustee for his minor children. The estate money he placed in a safe deposit box in the bank which he had previously rented as executor. His children's money he placed in another safe deposit box held jointly in the names of himself and his wife.

The bank was turned over to the comptroller of the currency somewhere around midnight of the same day and did not open the following morning. A receiver was appointed and several months later an assessment of 100 per cent. on the shareholders was made by the comptroller. The receiver having declined to permit access to the vault for the purpose of removing the currency placed in the two safe deposit boxes, Smith filed a petition in the court below for a rule requiring him to show cause why he should not permit the withdrawal of the funds from the estate box. The receiver (appellee) answered. The court below heard the evidence and thereafter entered an order directing the return of the withdrawn currency to the receiver. This appeal is from that decree.

The facts stipulated, considered with the oral evidence, show that the bank as of December 31, 1932, reported deposits aggregating somewhat in excess of eleven millions of dollars, capital of one million, and surplus and profits of around six hundred thousand. Its total footings were in excess of sixteen millions. In April of 1932, however, its deposits had begun to shrink and it became necessary to borrow from the Reconstruction Finance Corporation. Between April and January it had secured in that way above a million and three quarters dollars, for which it pledged above four millions of its securities. Withdrawals continued consistently after January 1st, and the bank's officers were seriously concerned. On Monday, February 20th, large withdrawals were made. On Thursday, the 23d, the withdrawals abnormally increased and continued to increase until the close of business on Saturday, the 25th, and were resumed and continued throughout the banking hours of Monday, February 27th. In the half day the bank was open on Saturday the 25th, and on Monday the 27th, the loss in deposits each day was in excess of $225,000. On February 25, 1933, the Governor of Maryland closed all the banks in that state. Similar action had previously been taken by the Governor of Michigan. In anticipation of the results which might follow, the cashier of the bank on that morning per-

sonally interviewed Smith and told him he did not know what the effect might be from a continuation of the general withdrawals and warned him to keep his eyes and ears open and to advise him at once of any important development at once. The cashier at the same time told Smith he did not want to leave his desk and possibly attract attention to what was going on in the savings department and that he would therefore designate another assistant cashier, Chaney, to keep in constant touch as go-between; that Chaney followed those instructions and made several reports during the half day the bank was open, such reports including adding machine lists of all withdrawals, with the name of the account where the withdrawal was more than normal. After the bank closed at noon on Saturday, the 25th, the cashier found that Smith had left the bank without making his report, and, shortly after 2 o'clock, telephoned him at his home and required him to return to the bank and submit his report of withdrawals, informing Smith that the matter was one of urgency. The following Monday morning Smith made the withdrawals. While the evidence also shows that Smith was not a director or general officer of the bank and likewise that he attended none of the meetings preliminary to the bank's closing, it would nevertheless require more credulity than we possess to accept Smith's statement he did not know the closing of the bank was imminent.

The rights of the parties depend upon Rev. St. § 5242 (12 USCA § 91) which provides:

"*Transfers by Bank and Other Acts in Contemplation of Insolvency.*—All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; and no attachment, injunction or execution, shall be issued against such association or its property before final judgment in any suit, action, or proceeding, in any State, county, or municipal court."

The three assignments of error all go to the one point, namely, that the court was in error in holding that the withdrawal was made in contemplation of insolvency. Appellant insists not only that he did not know and had no reason to know of the bank's insolvency but he goes even further and says that the bank was actually not insolvent on the withdrawal date.

█ As to the last, little need be said. The evidence shows quite clearly that the directors of the bank in surrendering possession realized that unless they should be permitted by the officers of the Treasury to refuse payments on demand, they must surrender. When permission was refused, they immediately turned the bank over to the comptroller. This alone was evidence of insolvency, for, as the Supreme Court said in McDonald v. Chemical Nat. Bank, 174 U. S. 610, 619, 19 S. Ct. 787, 790, 43 L. Ed. 1106, "the taking possession of the bank by the comptroller of the currency is a distinct declaration of insolvency." In Roberts v. Hill (C. C.) 24 F. 571, 573, it is said: "A bank is in contemplation of insolvency when the fact becomes reasonably apparent to its officers that the concern will presently be unable to meet its obligations, and will be obliged to suspend its ordinary operations." See, also, First National Bank v. Andresen (C. C. A.) 57 F.(2d) 17, and many cases cited there. Here the fact was made certain a month later by the comptroller's order requiring stockholders to respond to a 100 per cent. call.

█ Nothing, therefore, remains to be considered but the single question whether under the facts shown here Smith withdrew the money in contemplation of the bank's insolvency. As we have seen, he denies this in the petition filed by him, though he did not himself testify in the trial. In his petition his explanation is "he became apprehensive that all banks in the District of Columbia might close" and consequently "to protect the interests of the beneficiaries of the estate" of which he was executor he withdrew the money. That the effect of what he did, if we should permit it to stand, would be to protect them and enable them to obtain a preference over other depositors is perfectly clear, and it seems to us equally clear to let it stand would be to disregard the plain mandate of the statute. We have no doubt Smith's action in the withdrawals of the estate money and of his infant children's was prompted by proper motives, but that the impelling cause was his knowledge that if he delayed the funds would be put in jeopardy by the

closing of the bank we think is clearly proved. In the case of the estate money he had some days previously drawn a check for the greater part of it and mailed it to the beneficiary. He knew it was still undelivered, or at least uncollected, and his action in subsequently drawing a check to himself and converting it into cash shows unmistakably that he anticipated the closing down of the bank before the former check could be presented. In this view to say that knowledge was lacking or that the intent to take advantage of it was not shown would be to ignore the plain facts.

The purpose of the statute is to enforce equality of division among all creditors. The purpose may be defeated in the case of withdrawals by a depositor in the ordinary course of business at any time prior to the closing of the bank, but a different rule prevails in the case of one who with knowledge of impending disaster seeks to prefer himself. See Vann v. Federal Reserve Bank (D. C.) 47 F. (2d) 786, 788, where it is said that if knowledge of the impending closing of a bank is given a depositor "as a result of which he is enabled to withdraw his deposit, the effect of such a withdrawal would be to create a preference in his behalf, voidable and recoverable under the express terms of the statute."

Smith, though without responsibility for the policy of the bank, was in charge of one of its important departments. He saw as clearly as any officer or director the steady undermining of public confidence in its stability and the continuous drain on its resources. The atmosphere of the place was surcharged with impending disaster, and his act shows he sensed it fully and sought in his own interest to avoid it. This the statute condemns.

The decree of the lower court requiring restitution was therefore clearly right.

Affirmed.