**NELSON v. LEWIS et al.**
**No. 88.**

Circuit Court of Appeals, Second Circuit.
Nov. 19, 1934.

Sutherland & Sutherland, of Rochester, N. Y. (Arthur E. Sutherland, of Rochester, N. Y., of counsel), for appellants.

Charles Platt Williams, of Lyons, N. Y., for appellee.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

This suit was brought by the receiver of the First National Bank of Macedon, N. Y., to recover money withdrawn by the appellants from that bank on July 3, 1929, October 16, 1930, December 19, 1930, and April 1, 1931, and to require the return of bonds and securities transferred to the appellants on April 3, 1931. Appellants, by an agreement of December 31, 1928, deposited $61,886 with the bank, and the bank gave a pledge of certain securities owned by it as a guaranty against loss. These securities were placed in a custodial account with the Central-Hanover Bank in New York City. That bank recognized and subscribed to the pledge made for the appellants' benefit. For convenience, Robert Lewis may be considered

as the sole appellant. Robert Lewis became a stockholder and depositor of the bank in 1927, and was elected a director in January, 1928, resigning as director in July, 1929.

It is now definitely settled that this pledge of securities on December 31, 1928, was ultra vires and void. Texas & Pacific Ry. Co. v. Pottorff, 291 U. S. 245, 54 S. Ct. 416, 417, 78 L. Ed. 777.

The bank was closed by order of the Comptroller of the Currency on April 8, 1931, and appellee was appointed receiver.

On March 26, 1931, the appellant Robert Lewis was advised of a decision of a federal court to the effect that an agreement with a bank such as was here made for the pledge of securities as collateral was illegal. Smith v. B. & O. R. Co. (D. C.) 48 F.(2d) 861, affirmed 56 F.(2d) 799 (C. C. A. 3). On April 1, 1931, he advised the cashier of the bank that he would not carry his account any longer, and withdrew $15,000, being given a draft on a New York bank which was paid in due course. The balance was $28,690.84. The cashier then stated that the bank did not have sufficient cash on hand to pay the entire amount as the farmers' deposits were small at this spring season, and asked Lewis to take securities of the bank in place of cash. He agreed to consider it. He returned to the bank on April 3, 1931, at which time certain of the bank's securities were transferred to him in exchange for his bank deposit, at the bank's book values, which were slightly above the then market value. Lewis gave to the bank his check for $274.16, which was the excess above the amount of his deposit in the bank. Lewis released all claims upon the securities in the custodial account of the Central-Hanover Bank. The price thus paid for the securities received by him exceeded the market price by $1,855.

The capital stock of the bank was $25,000. Its published statement on April 1, 1931, showed a solvent condition as of March 25, 1931. After the bank closed it was found that the cashier had embezzled $32,000. The receiver has paid 52 per cent. in dividends to depositors, and there remain assets still to be liquidated. At the trial no claim was made for a return of the deposits withdrawn prior to April 1, 1931, as prayed for in the complaint, but a money judgment was granted for $15,000, the amount of the withdrawal on April 1, 1931, and for $28,690.84, the amount given for the securities exchanged on April 3, 1931. There is no finding that the appellants knew the bank was insolvent

before it closed. Lewis denied knowledge of the bank's insolvency.

The court below held that the contract of pledge of the securities was ultra vires, illegal, and void, and that therefore the payment to the appellants was "in consummation of such illegal contract," as was also the transfer of the securities on April 3, 1931. The appellants do not contest the illegality of the pledge pursuant to the agreement of December 31, 1928. As said in Texas & P. R. Co. v. Pottoroff, supra: "National banks lack power to pledge their assets to secure a private deposit. The measure of their powers is the statutory grant; and powers not conferred by Congress are denied."

But it is also said by the appellee that section 52 of the National Banking Act, 13 Stat. 115 (Rev. Stat. § 5242, 12 U. S. Code § 91 [12 USCA § 91]) which provides that "all payments of money to either [shareholders or creditors], made after the commission of an act of insolvency, or in contemplation thereof, * * * with a view to the preference of one creditor to another, * * * shall be utterly null and void," makes the transactions here involved an illegal preference and hence void. The conclusions of fact and law of the court below are on the theory that the payments here made were in "consummation of an illegal contract," and also gave the appellants an illegal preference. We have examined the record to ascertain whether an unlawful preference was granted by such payments.

The appellee contends that, since the bank did not have enough money on hand to pay Lewis when he demanded the return of his deposit, its insolvency was thereby established. Erhard v. Boone State Bank, 65 F.(2d) 48, 53 (C. C. A. 8), is cited as an authority therefor. That case did not so hold. It dealt with the Iowa rule that a bank is "insolvent" when unable to pay its depositors or creditors in the ordinary course of business. Section 91 deals with payments made "in contemplation" of an act of insolvency with a view to a preference. In Roberts v. Hill (C. C.) 24 F. 571, 573, the court said: "A bank is in contemplation of insolvency when the fact becomes reasonably apparent to its officers that the concern will presently be unable to meet its obligations." It said further that merely because the officers hope that an act of insolvency will not happen is immaterial if they have grounds for believing it to be probable. "An intent to give a preference is presumed when a payment is made to a creditor by a debt-

or who knows his own insolvency. * * * A preference is the natural and probable consequence under such conditions. * * * It is not necessary, in order to invalidate the transfer, that the party to whom it is made knows of or contemplates the insolvency of the bank."

In the same case Wheeler, J., said: "Insolvency is not enough; the statute does not make transfers after insolvency void."

If the financial condition of a bank is such that an actual act of insolvency is imminent, and the officers of the bank know or ought to know this condition, a payment to a creditor or depositor is void if not made in the ordinary course of business; an intent to prefer is presumed under such conditions, and as a rule the creditor and depositor need not know of the imminency of the act of insolvency. National Security Bank v. Butler, 129 U. S. 223, 9 S. Ct. 281, 32 L. Ed. 682; Federal Reserve Bank of Kansas City v. Omaha Nat. Bank (C. C. A.) 45 F.(2d) 511; Parks v. Knapp, 29 F.(2d) 547 (C. C. A. 3); American Surety Co. of N. Y. v. Jackson, 24 F.(2d) 768 (C. C. A. 9); Brill v. McInnes, 14 F.(2d) 306 (C. C. A. 8). But in McDonald v. Chemical Nat. Bank, 174 U. S. 610, 19 S. Ct. 787, 790, 43 L. Ed. 1106, it was held that an intent to prefer in contemplation of insolvency may not be presumed merely because the bank was insolvent and this fact was known to the officers. "It is matter of common knowledge that banks and other corporations continue, in many instances, to do their regular and ordinary business for long periods, though in a condition of actual insolvency. * * * It cannot surely be said that all payments made in the due course of business in such cases are to be deemed to be made in contemplation of insolvency, or with a view to prefer one creditor to another. There is often the hope that, if only the credit of a bank can be kept up by continuing its ordinary business, and by avoiding any act of insolvency, affairs may take a favorable turn, and thus suspension of payments and of business be avoided." See Hayden v. Chemical Nat. Bank (C. C.) 80 F. 587. And Rucker v. Kokrda, 68 F.(2d) 73, 75 (C. C. A. 10), limits the cases referred to above to situations where a depositor's check has been dishonored and he accepts a transfer of a mortgage or other securities for his deposit. There it was said: "Such a transaction could only occur after the depositor had been denied the cash, which is in itself an act of insolvency."

It was there held that a receiver is not entitled to recover money withdrawn by a depositor from a bank open for business even though the bank was insolvent to the knowledge of its officers. See, also, Sioux Falls Trust & Savings Bank v. Homer W. Johnson Co. (D. C.) 20 F.(2d) 693.

The payments here concerned were of both cash and securities. They must be dealt with separately.

A mere preponderance of liabilities over assets does not make a payment under such conditions void as constituting a preference. There must be a present inability to meet the debts of the bank as they mature. While the bank was insolvent in the sense that its assets did not equal its liabilities, the question is presented as to whether it could meet its obligations as they matured. The only evidence tending to support a claim that it could not do so is the fact that there was no material change in the bank's condition between April 1, 1931, and April 8, 1931, the date when the Comptroller of the Currency closed the bank because of its insolvency. Another fact, although not so important, since it was a small bank, is that on April 1, 1931, the cashier did not have $15,000 cash on hand to pay the defendant and again, on April 3, 1931, he did not have enough cash on hand to equal the balance of appellant's deposit. But it did have other assets, and gave other securities as suggested by its cashier. The bank was open daily for business when these payments were made, and remained so open up to April 8th, and nothing otherwise indicated that it could not meet its obligations as they matured.

Even assuming that the bank was insolvent on the date of the withdrawals, was this fact known to the officers? The cashier, an embezzler of its funds, might have known it, but the appellee has shown no facts which indicate such knowledge on the part of the other officers, and appellee relies upon a presumption that the officers knew. The cases where illegal preferences have been held to have been made show either actual knowledge of insolvency on the part of the officers (American Surety Co. v. Jackson, supra; Nat. Security Bank v. Butler, supra), or that the officers could not help but know because of the assets being greatly below the liabilities (Brill v. McInnes, supra; Roberts v. Hill, supra; Parks v. Knapp, supra). None of the cases hold that there is a presumption of knowledge of insolvency. McDonald v. Chemical Nat. Bank, supra, held that an

524

intent to prefer cannot be presumed merely from the fact that the bank is actually insolvent and that such condition is known to the officers.

■ "Ordinary course of business" means the taking of deposits and the paying of withdrawals in the customary manner. There was nothing not usual or not ordinary about appellant's request to withdraw his deposit. In the recent case of Rucker v. Kokrda, 68 F.(2d) 73, 75 (C. C. A. 10), a depositor withdrew his deposit partly in cash and partly by draft the day before the bank closed. The court there said: "There would be little confidence left in our national banks if a depositor knew that even if he got his money out before the bank closed, he might be harried with later suits to redeposit it." It was held the payment could not be recovered. So here the appellant was paid $15,000 in the "ordinary course of business," and such payment cannot be recovered by the appellee.

■ The sale of securities on April 3, 1931, rests upon the same conditions. The appellants say it constituted a purchase of the securities, the consideration being the closing of the account, or the canceling of the indebtedness of the bank to them. Whether or not the transaction constituted a purchase, what occurred on April 3 was in furtherance of the desire of the appellant to close his account. If appellant was willing to take securities in place of cash, which cash he could have had if he had desired to make the bank sell its securities below their book value, he should not now be obliged to refund their value, especially since no knowledge of insolvency is shown, and since, in any case, the payment was received in the ordinary course of business. The rules announced in McDonald v. Chemical National Bank and Rucker v. Kokrda, supra, apply to this transaction. There had been no default in any matured obligation by the bank and the transaction was in the ordinary course of business. If the defendant had insisted upon cash rather than favor the bank by accepting securities, the rule of the Rucker v. Kokrda and McDonald v. Chemical National Bank Cases, supra, would apply. On this record there was no illegal preference granted in the transactions of April 1 and April 3, 1931.

■ The withdrawals of April 1 and April 3, 1931, were not in any manner in consummation of the contract or pledge of December 31, 1928.

Decree reversed.

Edmund S. Whitson, of Clearwater, Fla., and Watrous, Hewitt, Gumbart & Corbin, of New Haven, Conn. (Charles A. Watrous and Morris Tyler, both of New Haven, Conn., of counsel), for plaintiff-appellant.