14007

KENNEDY v. ZIMMERMAN *ET AL.*

(178 S. E., 497)

*Mr. Charles B. Elliott,* for appellant,

*Messrs. Melton & Belser,* for respondents,

February 15, 1935.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

· This action, commenced in the Court of common pleas for Richland County, was tried and heard in said Court before his honor, Judge W. H. Townsend, under an agreed statement of facts and submission of controversy without action, under the provisions of sections 668 and 669, Code of South Carolina 1932. Judge Townsend decided the issues in favor of the defendants and issued an order to that effect, dated July 7, 1934. From this order the plaintiff, pursuant to due notice, has appealed to this Court upon exceptions in the cause.

For the purpose of a clear understanding of the issues involved in the case, we quote herewith the agreed state-

ment submitted to the Court in the cause, and signed .by the parties and their attorneys.

"STATEMENT

"Robert M. Kennedy, at all of the times hereinafter mentioned was and still is a resident of the County of Greenwood, said State. The Central Union Bank of South Carolina at the times hereinafter mentioned was and still is a banking corporation under the laws of the State of South Carolina, with banks in Rock Hill, Columbia, Greenwood, Due West and York.

"On February 25, 1933, Robert M. Kennedy requested F. E. Grier, the executive officer in charge of the Greenwood Branch of the Central Union Bank of South Carolina, to purchase for him three (3) U. S. Treasury 3% Bonds of 1951-55 Series of the par value of One Hundred ($100-.00) Dollars each, it being understood that Kennedy's deposit account would be charged with the cost of these bonds when the amount of such cost was ascertained. The bonds described were at that time selling under par. F. E. Grier, the executive officer of the Greenwood Branch, accepted this order, forwarding the same by letter under date of February 25, 1933, to the main branch of said bank at Columbia, S. C., requesting that the Columbia Branch make the purchase of the bonds for a customer, the same to be remitted to the Greenwood Branch upon receipt by the Columbia Branch of said bank.

"The Columbia Branch of the bank then ordered the bonds under letter dated February 28, 1933, from its New York correspondent, The Chemical Bank and Trust Company, requesting its correspondent to charge its (the Columbia Branch of the Central Union Bank of South Carolina), account to cover cost of the bonds and forward the same to it. This purchase was in fact made by the aforesaid correspondent bank, The Chemical Bank and Trust Company, on March 1, 1933, at a total cost of Two Hundred Ninety-Two and 56/100 (292.56) Dollars, for which

amount the account of the Columbia Branch of the bank was charged on the same date, payment being received by the Chemical Bank and Trust Company on March 2, 1933. The bonds were then forwarded to the Columbia Branch on the afternoon of March 2, being received by it on the 4th day of March, 1933.

"Before the delivery of these bonds could be made by the Columbia Branch to the Greenwood Branch, the banking holiday intervened, and The Central Union Bank of South Carolina suspended business on the 4th day of March, 1933. Simpson J. Zimmerman was appointed conservator-receiver of said bank on the 19th day of March, 1933, and J. Roy Barron was later appointed conservator-receiver.

"When the banking holiday intervened and the bank suspended business on the 4th day of March, 1933, Robert M. Kennedy had a credit balance in said bank of Three Hundred Eighteen and 57/100 ($318.57) Dollars, and at all times between the dates, February 25 and March 4, had a balance more than sufficient to pay for the treasury bonds in question.

"At no time did the Greenwood Branch debit the account of Kennedy in the amount of the purchase price of the bonds in question, which bonds are now in possession of the conservators-receivers of the said bank.

"The question which arises under these facts is as to whether or not the treasury bonds in question are the property of Robert M. Kennedy and whether or not they should be delivered to him by the conservators-receivers of the Central Union Bank; or whether on the other hand the conservators-receivers of the said bank are entitled to retain title to the bonds and administer them as an asset of the now insolvent Central Union Bank in behalf of its creditors."

As stated, Judge Townsend decided the issues in favor of the defendants, and in his appeal to this Court the plaintiff-appellant presents the following exceptions:

"1. His Honor, Judge W. H. Townsend, erred, it is respectfully submitted, in holding that March 4, 1933, was the date of the insolvency of the Central Union Bank of South Carolina, the error being that there was not the slightest evidence of such insolvency at such time, and the date of the insolvency of the bank was immaterial in this case, since his Honor should have held that the bank was the agent of the plaintiff, and that title to said bonds was at all times in the plaintiff and said bonds did not constitute assets of the bank.

"2. His Honor erred, it is respectfully submitted, in holding that the plaintiff is seeking to establish a preferential claim against the assets of the said bank, the error being that the bonds in question at no time constituted assets of the said bank, and that from the time of their purchase by the Central Union Bank of South Carolina title to said bonds was vested in the plaintiff, the said bank acting as the agent of the plaintiff.

"3. His Honor erred, it is respectfully submitted, in holding that the bonds in question should not be delivered to the plaintiff, because the transaction did not have the effect of augmenting the assets of the bank, the error being that at no time was the title to said bonds in the said bank, in that the bank was acting as the agent of the plaintiff, and the equitable title to said bonds at all times was in the plaintiff.

"4. His Honor erred, it is respectfully submitted, in holding that the defendants are entitled to said bonds, whereas, he should have held that the bank was the agent of the plaintiff throughout the transaction in question; that the title to said bonds from the time of their purchase by the bank was in the plaintiff; and he should have held that the bank, through its receivers, should complete the transaction by delivering the bonds in question to the plaintiff and charging plaintiff's account with the purchase price of said bonds, there being mutuality and a natural equity that

cross-demands should be offset against each other, particularly where the insolvency of the bank has intervened."

While, in his written brief presented to this Court, the plaintiff-appellant urged the several positions set forth in the above exceptions, special attention is called to the position that the bank acted as his agent in said transaction and bought the bonds for him as such agent. The appellant states, in effect, that, strictly speaking, the plaintiff is not claiming a preference in the distribution of the assets of the insolvent bank. He contends that upon the purchase of the bonds in question by the bank and the payment of the purchase price therefor the equitable title thereto vested in the plaintiff, and that thereupon the only right the bank had was to collect the purchase price from the plaintiff, and that the plaintiff's account in the bank should be charged with the purchase price thereof, since his account was sufficient in amount to take care of the purchase price of the bonds.

The respondents take the position that to allow the plaintiff-appellant's position to prevail would, in effect, amount to preferring his claim over those of other creditors of the insolvent bank. Attention is called to the fact that, under the agreed statement of facts set forth above, it clearly appears that at no time was the plaintiff's account charged with any sum in connection with the purchase of the said bonds and that he, therefore, had the right at any time to issue checks and draw against his account; the said account being in the Greenwood Branch Bank of the said Central Union Bank of South Carolina, whose principal office was at Columbia, S. C. The holding of the Circuit Judge is in accord with respondents' position, and we think the record in the case sustains the same. We are also of the opinion that the trial Judge, as set forth in his decree, was warranted in finding and holding that the said bank was insolvent as of March 4, 1933.

We consider it unnecessary to discuss the questions at length and deem it sufficient to state that we agree with the conclusion reached by the Circuit Judge.

The exceptions are overruled, and the order and judgment thereon affirmed.

MESSRS. JUSTICES STABLER and BONHAM, and MESSRS. ACTING ASSOCIATE JUSTICES C. J. RAMAGE, and E. C. DENNIS, concur.