14201

ZIMMERMAN ET AL. v. GRENDEL MILLS

(183 S. E., 162)

*Messrs. Grier, Park, McDonald & Todd,* for appellant.

*Messrs. Melton & Belser* and *Mays & Featherstone,* for respondents,

January 7, 1936.

The opinion of the Court was delivered by MR. CHIEF JUSTICE STABLER.

The agreed facts out of which this action arose, briefly stated, are these: On March 2, 1933, the Grendel Mills had a deposit balance in its favor in the Greenwood branch of the Central Union Bank of South Carolina, which we shall refer to as the bank, amounting to $2,578.13. On March 3, in order to cover certain checks of the defendant aggregating $9,230.85 which were paid and charged against its account on that date, and in order to provide a deposit balance in its favor for the purpose of meeting its pay roll during the following week, the mill deposited to its credit in the bank $150.00 in cash, a check of the Ætna Life Insurance Company for $11.60, and a check of its own on the Bankers Trust Company of New York for $10,000.00. After these withdrawals and deposits had been entered, the account of the mill with the bank showed a balance of $3,472.19 in favor of the former. The two checks deposited were forwarded by the bank on the same day to its correspondent at Charlotte for collection, but, because of a nationwide banking holiday declared by the President of the United States on March 5, 1933, they were returned without presentation and were charged back to the mill's account.

On March 6, 1933, the Governor of South Carolina declared a general banking holiday in this state; and, when

the bank, in response to a question, informed the mill that it would not be in position, by honoring the latter's check, to furnish it funds necessary to meet its pay roll due that week, the mill requested 'a statement of its account, with a return of all canceled checks and vouchers. This statement was furnished by the bank, which showed an indebtedness of the mill in the sum of $6,539.41; but the former failed to return to the latter the $10,000.00 check, giving as its reason that it was in the Columbia branch. When Zimmerman was later appointed conservator of the bank, he forwarded, without notice to the mill, this check for presentation to and collection from the drawee. The drawee, however, under instructions previously given it by the drawer, refused payment, and the check was then duly protested.

On March 15, 1933, the mill offered to settle its indebtedness of $6,539.41 by delivering to the bank sundry checks held by the former, and which were drawn upon the latter by other depositors thereof, in the aggregate sum of $5,-612.78, together with the mill's own check upon another bank for $926.63. The bank received these checks with the understanding that it would make an investigation as to whether they might legally be accepted in settlement of the obligation named, and, if so, that it would accept them as payment. After the investigation had been made, the bank advised the mill on April 29, 1933, that the checks could not be accepted for that purpose, and at the same time made a demand upon the mill for payment of its indebtedness. No request for the return of these checks to the mill has ever been made by it, and they are still in the possession of the conservators.

After the declaration of the banking holiday, the Central Union Bank never reopened for unrestricted business, and on the 20th day of March, 1933, Zimmerman was duly appointed conservator of such bank, and later Barron was named as co-conservator. On June 20, 1933, Governor Blackwood, after consulting with the Board of Bank Con-

trol for South Carolina, and after concluding that the bank was insolvent or in imminent danger of insolvency, ordered its liquidation. Pursuant to this order and under the direction and supervision of the Court of Common Pleas for Richland County, the conservators are now liquidating its assets.

Upon the mill's refusal to pay the amount claimed as due and owing by it to the bank, this action was instituted by the conservators-receivers, in which judgment was asked against the defendant in the sum of $6,539.41, with interest and a protest fee of $1.40. Judge Stoll, who heard the matter, gave judgment for the plaintiffs and from his order this appeal is taken.

We quote from the circuit decree:

"Upon the argument, the case resolved itself primarily into the question of whether the defendant was entitled to set-off against its obligation certain checks held by it which were drawn upon the Central Union Bank by other depositors of the said bank. However, since no checks of other depositors were being honored by the bank at the time that the defendant offered the above-mentioned checks in settlement of its indebtedness, and, since I consider that the bank was then insolvent, according to the definitions of insolvency set forth in *South Carolina State Bank Receiver v. Stokes,* 169 S. C., 173, 168 S. E., 541, and the cases cited therein, and had been insolvent since March 4, 1933, as held by our Supreme Court in the case of *Kennedy v. Zimmerman,* 175 S. C., 122, 178 S. E., 497 (opinion filed February 15, 1935), to allow the defendant to offset the checks held by it would amount to granting an unlawful preference, and, therefore, such a set-off cannot be allowed. .

"The defendant also contended that because of the retention of the said checks, the plaintiffs are estopped to deny that the obligation of the defendant was paid thereby, but I do not think that the circumstances attending the receipt and the retention of the checks bear out this contention, and I so find and hold."

We think that Judge Stoll, under the admitted facts, was correct in his holding as to the insolvency of the bank, and that the cases cited in his order sustain his conclusion. As pointed out by the respondents, there is no substantial difference between the statement of the facts as to the date of the insolvency of the Central Union Bank in the present case and in the case of *Kennedy v. Zimmerman*, 175 S. C., 122, 178 S. E., 497. It is agreed that, after the declaration of the holiday, the bank never reopened for unrestricted business; and the only fair inference which may be drawn from all the facts admitted, and of which this Court may take judicial cognizance, is that the bank's insolvency did not materialize during the two or three weeks' period prior to the appointment of the conservator on March 20th, while practically no business was being done, but that such condition was present, as held by the Circuit Judge, on March 4, 1933.

Nor do we think that there are any facts in this case which form the basis of an estoppel, as contended by the appellant. The bank received the checks from the mill, as has been pointed out, with the definite understanding that it would make an investigation as to whether it could apply them to the payment of the mill's indebtedness, and that it would do so if that could be done. The investigation disclosed that they could not be so applied, and the mill was duly notified of that fact. The contention that the appellant has been injured by the bank's retention of the checks, is not sustained in the circumstances disclosed. Aside from the admission of the fact that the mill made no demand that the checks be returned to it, and that it gave the bank, with whom it had been doing business, no instructions in regard to the matter, the record contains no evidence that the appellant tried or has failed to collect the amount of these checks from the drawers thereof.

We think, however, that the trial Judge was in error in holding that the appellant was liable for the sum of $1.40 protest fee on the check for $10,000.00.

Zimmerman, as conservator of the bank, had constructive notice of what really had occurred with reference to this check; and he knew, or should have known, that it was no part of the assets of the bank and that he had no right to present it for payment. The appellant therefore should not be required to pay this fee.

The judgment of the Circuit Court, less the protest fee of $1.40, is affirmed.

MESSRS. JUSTICES CARTER, BONHAM, BAKER and FISH-BURNE concur.