**WILLING v. EVELOFF et al.**
No. 6546.

Circuit Court of Appeals, Third Circuit.
Jan. 4, 1938.

Samuel E. Kratzok, of Philadelphia, Pa., for appellant.

William Kendall, David W. Niesenbaum, Milton A. Kamsler, and Sundheim, Folz & Sundheim, all of Philadelphia, Pa., for appellees.

Before BUFFINGTON, THOMPSON, and BIGGS, Circuit Judges.

BIGGS, Circuit Judge.

Upon February 28, 1933, the board of directors of the Sixth National Bank of Philadelphia adopted a resolution which was in part as follows:

"Whereas this bank desires to take advantage of any law or laws authorizing National Banks to withhold payments of deposits made in this bank up to and including this date: * * *

"This bank, therefore, requests permission to defer payments of all deposits made

up to and including February 28th, 1933, and to make payments in the future as assets are collected, distribution on such basis as shall be agreeable to the Comptroller of the Currency. It is also understood that the deposits received after February 28th, 1933, will be kept separate and distinct and be kept in cash or assets authorized by the Comptroller of the Currency."

Following the passage of this resolution and at 3:30 p. m., upon February 28, 1933, the bank ceased payment to its depositors. Upon March 3, 1933, its president received authorization from the Comptroller of the Currency to conduct the business of the bank in the manner set forth by the resolution referred to. Upon March 14, 1933, the president of the bank was appointed its conservator by the Comptroller, and served as such until some time later when a receiver was formally appointed.

All deposits received after 3:30 p. m. upon February 28, 1933, were segregated, and withdrawals on an unrestricted basis were allowed only out of these funds. Upon subsequent liquidation of the assets of the bank, it became apparent that the institution was insolvent and that general depositors would receive approximately 20 cents upon the dollar.

Upon February 28, 1933, prior to the passage of the resolution referred to, the appellees, a copartnership, had on deposit in their account with the Sixth National Bank, the sum of $14,233.36. On March 2d, three checks totaling $1,443.06, given by the appellees in payment of certain accounts, arrived at the bank for payment. One of the appellees, acting on behalf of the partnership, persuaded the president of the bank to cause these checks to be paid. Upon March 3d, this appellee persuaded the president to allow the appellees to withdraw the further sum of $6,000 from their account. This withdrawal was put into the category of unrestricted deposits, and was thus made available to the appellees for the purposes of their business.

In the case at bar, the receiver of the Sixth National Bank sued the appellees, the defendants below, to recover the sum of the withdrawals heretofore referred to. The appellees filed a counterclaim for the sum of $1,413.33, this representing a 20 per cent. dividend (already paid to other depositors) upon the sum of $7,066.65, the balance of their account of $14,233.30, after deducting therefrom the sum of $7,443.06 paid to them.

The learned trial judge refused the prayer of the appellant for binding instructions in his favor, and sent the case to the jury for its determination of the issue of whether or not the bank "was closed under the circumstances to such an extent or in such a way as should prohibit the president of the bank from doing what he is said to have done, * * *" viz., permitted the payments to the appellees. The jury rendered a verdict in favor of the appellees and assessed their damages under the counterclaim in the sum of $1,413.33, as stated in the verdict, "subject to a point of law reserved." After verdict, the appellant moved for judgment in his favor and against the appellees, non obstante veredicto, and for a new trial. Both motions were refused by the trial court which entered judgment upon the verdict in favor of the appellees and against the appellant. From this judgment the appeal is taken. Appropriate assignments of error have been filed.

The pertinent statutory provisions are contained in section 5242, R.S., 12 U.S.C.A. § 91, and are as follows:

"*Transfers by bank and other acts in contemplation of insolvency.*

"All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; and no attachment, injunction or execution, shall be issued against such association or its property before final judgment in any suit, action, or proceeding, in any State, county, or municipal court."

The first question presented for our determination may be phrased as follows: When a national bank, subject to a resolution of its board, ceases to pay the demands of its depositors and, because it is insolvent, never thereafter resumes this function, Was an act of insolvency committed by the bank at the time of the suspension of

payments to depositors? The insolvency referred to in the statute quoted above has been almost universally defined as "commercial insolvency"; the inability of a business man to pay his debts as they become due in the regular and ordinary course of business. Roberts v. Hill, C.C., 24 F. 571, 577; Kullman & Co. v. Woolley, 5 Cir., 83 F.2d 129, 132.

In the case last cited, the governing principle was expressed as follows: "A bank is in contemplation of insolvency when the fact becomes reasonably apparent to its officers that the concern will presently be unable to meet its obligations, and will be obliged to suspend its ordinary operations."

In the leading case of Hayden v. Chemical National Bank, 84 F. 874, 876, 877, the Circuit Court of Appeals for the Second Circuit held that an act of insolvency was committed by a national bank when it made . an assignment for the benefit of creditors, suspended business, or did "any of those things which indicate to creditors that a debtor has become insolvent." In the case of Hirning v. Federal Reserve Bank of Minneapolis, 52 F.2d 382, 82 A.L.R. 297, the Circuit Court of Appeals for the Eighth Circuit held that the passage of a resolution by the board of directors of a national bank, to the end that its operations should be suspended due to heavy withdrawals and shrinking reserves, was an act of insolvency. See, also, Smith v. Baldwin, 63 App.D.C. 72, 69 F.2d 390, 392, holding that when the directors of a national bank, refused permission by · the Comptroller to withhold payment of deposits, surrendered possession, an act of insolvency had been committed.

Now, the resolution of the board of directors of the Sixth National Bank of Philadelphia, while not expressly using language referring to shrinking deposits or to an impaired financial condition, none the less made ·plain the desire of the directors to take advantage of any law or laws authorizing the withholding of payment of deposits. Following the passage of ·the resolution, no general depositors, other than the appellees, were paid. Within a very short time thereafter the insolvency of the bank was abundantly manifest. It must be presumed, in the absence of evidence to the contrary, when the insolvency of a national bank is clearly demonstrated, that the insolvency existed at the time of the passage of the resolution and the failure to pay depositors on demand. Under the circumstances of the case at bar, we hold that an act of insolvency was committed by the bank at such time. See Zimmerman v. Grendel Mills, 178 S.C. 346, 183 S.E. 162, and by analogy, Mechanics Universal Joint Company v. Culhane, 7 Cir., 80 F.2d 147, affirmed 299 U.S. 51, 57 S.Ct. ·81, 81 L.Ed. 33.

As stated in Kullman & Co. v. Woolley, supra, "The bank was not open, but only its front door." The fact that the Sixth National Bank continued to receive deposits which, segregated, were put upon an unrestricted basis of payment does not mean that it was open for the conduct of business as a going banking concern. The circumstance that the institution continued to retain its employees, that its books were apparently correctly kept, and that it fulfilled some of the functions of a banking institution, did not render it any the less a "closed" bank to its depositors who were unable to secure their money. But it is not the "closing" of a bank, to use the phrase colloquially, which determines the status of depositors and creditors. The test is, Has an act of insolvency been committed? Failure to pay depositors and creditors in the ordinary and regular course of business is an act of insolvency. All evidence in the case at bar shows the commission of an act of insolvency by the bank upon the passage of the resolution and refusal to pay depositors. There is no evidence to the contrary.

Here was no question for the jury. The material facts and circumstances were not in dispute. The legal effect of such facts was a question of law for the court, and the learned trial judge should have ruled that an act of insolvency had been committed by the bank. It follows necessarily that the payments to the appellees were preferences and were null and void within the provisions of section 5242, of the Revised Statutes, 12 U.S.C.A. § 91. The knowledge or lack of knowledge of the appellees of the circumstances under which the payments were made to them was immaterial. National Security Bank v. Butler, 129 U.S. 223, 9 S.Ct. 281, 32 L.Ed. 682; Aycock v. Bradbury, 10 Cir., 77 F.2d 14; First National Bank v. Andresen, 8 Cir., 57 F.2d 17; Ball v. German Bank, 8 Cir., 187 F. 750. Here, also, was no question for the jury, since no material fact or circumstance was in dispute.

It follows, therefore, that the appellant was entitled to binding instructions in his favor as prayed for by him, and the learned trial judge should have given such instructions to the jury.

The jury purported to render its verdict "subject to a point of law reserved." An examination of the record discloses no reservation of a point of law by the trial court upon the question here presented. Under such circumstances, no judgment may now be rendered for the plaintiff, non obstante veredicto. Ætna Insurance Co. v. Kennedy, 301 U.S. 389, 57 S.Ct. 809, 81 L. Ed. 1177.

Accordingly, the judgment of the court below is reversed and a new trial ordered, with directions to proceed in due course and in accordance with this opinion.