BENDER v. ETNIER et al.
No. 890.

District Court, M. D. Pennsylvania.
March 1, 1939.

Jos. W. Ray, Jr., Herman M. Buck, and Shelby, Ray & Coldren, all of Uniontown, Pa., for receiver.

Snyder, Hull, Leiby & Metzger, of Harrisburg, Pa., for defendants.

JOHNSON, District Judge.

This action is brought by the Receiver of the First National Bank of Orbisonia, Pennsylvania, to recover, as an alleged illegal preference, the proceeds of certain checks drawn by L. S. Etnier for the amounts on deposit in the bank to the accounts of several municipalities of which Etnier was treasurer. At the time of the withdrawals Etnier was cashier and a director of the bank. The action is brought under Section 5242 of the Revised Statutes of the United States, 12 U.S.C.A. § 91, which provides that payments made by a national bank after the commission of an act of insolvency, or in contemplation thereof with a view to a preference of one creditor to another shall be null and void. Testimony was taken by the court and from it the court arrives at the following:

I. Findings of Fact.

1. The First National Bank of Orbisonia, Pennsylvania, hereinafter referred to as the bank, is a national banking corporation, and was insolvent at the time of the institution of this action. It is in the process of liquidation through the Comptroller of the Currency of the United States, represented by Mark T. Bender, receiver of the bank, and plaintiff in this action.

2. The bank for many years conducted a general banking business in the Borough of Orbisonia, Huntingdon County, Pennsylvania.

3. On September 29, 1931, the bank closed its doors pursuant to a resolution passed by a unanimous vote of its board of directors.

4. On October 5, 1931, the Comptroller of the Currency of the United States certified that the bank was insolvent and appointed Edwin H. Ridgway, Receiver.

5. On July 10, 1934, it was suggested to the court that Edwin H. Ridgway had resigned as receiver and the style of the plaintiff was changed to Elmer Ellis, successor receiver of the bank, and by order of April 8, 1937, the style of the plaintiff was changed to Mark T. Bender, Receiver, as the successor receiver to Elmer Ellis.

6. The School District of the Borough of Orbisonia, hereinafter referred to as the school district, is a municipality of the State of Pennsylvania, and is located in the Borough of Orbisonia, Huntingdon County, Pennsylvania.

7. The defendant, L. S. Etnier, was treasurer of the school district and certain other municipalities on September 3, 1931, the date of the withdrawals in question.

8. The defendant, L. S. Etnier, maintained his accounts as treasurer of the municipalities referred to above in the First National Bank of Orbisonia.

9. For approximately ten years prior to the closing of the bank, L. S. Etnier had acted as cashier and general managing officer of the bank, and for approximately three years prior to the closing of the bank he had acted as one of its directors.

10. The defendants, S. O. Fraker and J. A. Puckey, were sureties on the bond given by the defendant Etnier, as treasurer of the school district and were directors of the bank both at the time of the withdrawals in question and at the time of the closing of the bank.

11. On January 13, 1931, the defendants, Etnier, Fraker, and Puckey, joined with the other directors in the execution of a bond in the amount of $24,000, to guarantee an impairment in the capital of the bank. This impairment was largely caused by a decline in the market value of the securities in which the funds of the bank were invested.

12. At a regular meeting of the board of directors of the bank held on June 30, 1931, at which the defendants, Etnier, Fraker and Puckey were present, a resolution was passed providing for a reduction by one-fourth of the salaries of all officers and employees of the bank.

13. At a regular meeting of the board of directors of the bank held on August 25, 1931, the defendants, Etnier and Puckey, were authorized to obtain a loan or loans for the benefit of the bank.

14. On August 27, 1931, a special meeting of the board of directors of the bank was held at the request of William H. Morgan, a national bank examiner. The defendants, Etnier, Fraker and Puckey were present at this meeting and were told by the bank examiner that there was a further impairment of the capital of the bank, largely due to a decline in the market value of its investments, and that something must be done to strengthen the bank's financial position. A reorganization of the bank was suggested by the examiner as a possible solution of the bank's difficulties.

15. On August 31, 1931, a meeting of the board of directors was held at Altoona, Pennsylvania, to discuss the proposed reorganization. The defendants Etnier, Puckey and Fraker were present at this meeting and were told by the bank examiner that in his opinion it would be necessary to raise approximately $100,000, in order to effect a successful reorganization. This meeting was adjourned pending negotiations toward raising capital for the proposed reorganization.

16. On September 3, 1931, L. S. Etnier as Treasurer of the school district drew a check for the full amount of its account in the bank, amounting to $7,828.62, payable to the First National Bank of Huntingdon, Pennsylvania, and personally delivered the same to the Huntingdon bank. The other municipal funds held by Etnier as treasurer were transferred to the Huntingdon bank on the same day and in the same manner.

17. The total amount transferred by Etnier to the Huntingdon Bank, being the entire amount held by him as treasurer of the various municipalities was $21,010.19.

18. On September 29, 1931, a resolution was passed by the board of directors of the bank placing its affairs in the hands of the Comptroller of the Currency.

19. Until the bank was placed in the hands of the Comptroller of the Currency, it was open during each banking day, and transacted its usual banking business, accepting such deposits as were tendered to it, and paying every demand which was made upon it. In short, the bank was able to meet all of its obligations as they matured.

20. On November 2, 1931, the plaintiff notified the First National Bank of Huntingdon not to recognize any checks drawn on account of the municipalities in question unless drawn in favor of the receiver of the Orbisonia Bank.

21. L. S. Etnier was likewise requested by the receiver to retransfer the funds to the Orbisonia Bank.

22. At the time the above notice was received by the Huntingdon Bank, the defendant school district had $4,734.87, on deposit, and it is admitted that the liability of the First National Bank of Huntingdon is limited to that amount.

## II. Conclusions of Law.

1. The First National Bank of Orbisonia was not insolvent and it had committed no act of insolvency prior to the time when the transfers in question were made.

2. The transfers in question were not made in contemplation of insolvency, with a view to prevent the application of its assets in the manner prescribed by law, or with a view to the preference of one creditor to another.

3. Plaintiff has failed to prove facts sufficient to constitute a valid cause of action against any of the defendants, and consequently, a decree must be entered in favor of the defendants.

## III. Discussion.

The statutory provision under which the action is brought reads as follows: "All transfers of the notes, bonds, bills of exchange, or other evidences of debt owing to any national banking association, or of deposits to its credit; all assignments of mortgages, sureties on real

estate, or of judgments or decrees in its favor; all deposits of money, bullion, or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, made with a view to prevent the application of its assets in the manner prescribed by this chapter, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void; * * *." 12 U.S.C.A. § 91.

■ The first question presented is whether the transfers involved in the present case were made after the commission of an act of insolvency. As used here, insolvency means the inability to pay debts, or meet obligations, as they become due in the regular and ordinary course of business. Willing v. Eveloff, 3 Cir., 94 F.2d 344; Federal Intermediate Credit Bank v. L'Herisson, 8 Cir., 33 F.2d 841. "An act of insolvency takes place when a business concern or a bank has failed to pay some of its obligations, made an assignment for the benefit of creditors, suspended business, or done any of those things which indicate to creditors that a debtor has become insolvent." Hayden v. Chemical National Bank, 2 Cir., 84 F. 874, 876.

■ The First National Bank of Orbisonia had not committed an act of insolvency at the time of the transfers in question, and so far as the testimony discloses no such act was committed until it closed its doors, nearly one month later. In fact, the evidence clearly shows that it met all of its obligations as they matured up to September 29, 1931.

■■ The remaining question is whether the transfers were made in contemplation of insolvency, with a view to prevent the application of the bank's assets in the manner prescribed by law, or with a view to the preference of one creditor to another. "A bank is in contemplation of insolvency when the fact becomes reasonably apparent to its officers that the concern will presently be unable to meet its obligations, and will be obliged to suspend its ordinary operations." Roberts v. Hill, C.C., 24 F. 571, 573. In other words, if the defendants knew, or ought to have known, that at the time of the transfers the suspension of the regular business of the bank was imminent, the transfers were made in contemplation of insolvency. Nelson v. Lewis, 2 Cir., 73 F.2d 521.

■ In cases of this nature the burden of proving that the transfers were made in contemplation of insolvency is on the plaintiff. Collins v. School District, 3 Cir., 72 F.2d 339. In the present case, the plaintiff has failed to sustain this burden. So far as appears from the testimony, the defendants had good reason, at the time of the transfers, to believe that the bank would go on with its business in the usual way. The bank was under no greater financial stress at this time than it had been for several months. The reorganization which was proposed at the board meeting on August 31, 1931, was still pending. The bank had ample cash assets to meet its current obligations, and negotiations were pending with the Comptroller of the Currency to readjust the amount of depreciation charged against the bank's securities by the examiner.

Upon consideration of the entire record the evidence is insufficient to prove that the transfer was made after the commission of an act of insolvency, or in contemplation thereof, or made with the view to prevent the application of the assets of the bank in the manner prescribed by law, or with the view of preferring one creditor to another. It is therefore

Ordered that judgment be, and is hereby entered in favor of each of the within named defendants, the costs to be paid by the plaintiff.